349 F.2d 781
 James Edward MARTIN, Appellant,
v.
COMMONWEALTH OF VIRGINIA, C. C. Peyton, Superintendent of
the Virginia State Penitentiary, Honorable Robert Y. Button,
Attorney General of Virginia, and Charles P. Chew, James W.
Phillips and Pleasant Shields, members of the Virginia
Parole Board, Appellees.
 No. 9613.
 United States Court of Appeals Fourth Circuit.
 Argued April 5, 1965.
Decided Aug. 5, 1965.
 
 Ronald P. Sokol (Court-assigned counsel), Charlottesville, Va., for appellant.
 Reno S. Harp, III, Asst. Atty. Gen. of Virginia, (Robert Y. Button, Atty. Gen., of Virginia, on brief), for appellees.
 Before HAYNSWORTH, Chief Judge, and SOBELOFF, BOREMAN, BRYAN and J. SPENCER BELL, Circuit Judges, sitting en banc.
 SOBELOFF, Circuit Judge.
 
 
 1
 In June, 1960, James E. Martin was convicted in the Hustings Court of the City of Richmond, Virginia, of second-degree murder and sentenced to imprisonment for fifteen years. He concedes the validity of the conviction and sentence. Had this been his only conviction, he would have become eligible for consideration for parole in 1963. However, while serving his sentence, Martin escaped from a prison camp and was thereafter convicted of escape and grand larceny for which he was sentenced to terms of imprisonment of five and three years respectively, service of these sentences to begin upon expiration of the fifteen-year sentence.
 
 
 2
 Martin contends that these convictions are constitutionally defective. He claims that when he asked permission to write home for money to hire a lawyer to defend him, he was told by the prison authorities that all of his privileges were taken from him and that he could neither write letters nor receive visitors or mail until after he was tried. The appellant's contention is that by being held incommunicado during the period from arrest to trial he was denied the constitutional right to have counsel of his own choosing. On the morning of the trial and only ten minutes before it began, the court appointed a lawyer for him. The petition raises the further contention that the court-appointed counsel was incompetent. It alleges that the lawyer, a former Commonwealth attorney, told Martin that he had spoken with the judge and prosecuting witness and, without seeking additional time to study the case, the appointed lawyer advised Martin to plead guilty so that he would 'get off real light.' Altogether, the appointment of the attorney, the consultation with the client, the court proceedings, including the imposition of sentence, consumed approximately ten minutes. The attorney spoke not a word in the defendant's behalf, but instead spent the time joking and conversing with the guard, and finally, failed to take an appeal as the defendant requested and the lawyer promised. Letters to the attorney inquiring about the status of the appeal were not answered, and when Martin learned from the clerk that no appeal had been taken, it was too late to appeal.
 
 
 3
 Martin has thus sufficiently alleged deprivation of his constitutional right to retain counsel of his own choosing, Chandler v. Fretag, 348 U.S. 3, 9, 75 S.Ct. 1, 99 L.Ed. 4 (1954), to access to the courts and counsel, Ex parte Hull, 312 U.S. 546, 549, 61 S.Ct. 640, 85 L.Ed. 1034 (1941); Cochran v. State of Kansas, 316 U.S. 255, 257-258, 62 S.Ct. 1068, 86 L.Ed. 1453 (1942); Dowd v. United States ex rel. Cook, 340 U.S. 206, 71 S.Ct. 262, 95 L.Ed. 215 (1951); Coleman v. Peyton, 340 F.2d 603, 604 (4th Cir. 1965), and to effective assistance of court-appointed counsel, Turner v. State of Maryland, 303 F.2d 507 (4th Cir. 1962).
 
 
 4
 Because the convictions for escape and larceny have the additional effect of deferring until 1966 his eligibility for consideration for parole on the sentence he is now serving,[1] Martin has sought an immediate declaration of their invalidity.
 
 
 5
 His allegations, as above set forth, were initially presented to the Hustings Court in a petition for a writ of habeas corpus, but this was denied on the ground that habeas corpus is available only to attack a sentence presently being served. The Supreme Court of Appeals of Virginia affirmed. Frustrated in this effort, the prisoner thereupon filed a 'Motion for Declaratory Judgment' in the federal District Court invoking 28 U.S.C.A. 2201, and claiming denial of his rights in violation of the Due Process Clause of the Fourteenth Amendment. The District Court, without holding a hearing, denied relief on the ground that 'the Declaratory Judgment Act does not provide a substitute for habeas corpus or other collateral procedures.' This is Martin's appeal.
 
 
 6
 Ordinarily, a prisoner may resort to federal habeas corpus to make a collateral attack on federal constitutional grounds upon his state court conviction. The federal habeas corpus statute, 28 U.S.C.A. 2241 (1959), makes the writ available for this purpose if the prisoner is 'in custody in violation of the Constitution * * * of the United States. * * *' Over thirty years ago, the Supreme Court held that a sentence which the prisoner had not begun to serve did not satisfy the statutory requirement of 'custody' even though a result of the challenged sentence was to thwart his eligibility for parole. McNally v. Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238 (1934). If this decision stood alone, unqualified by later decisions of the Supreme Court, we as a lower court would be bound to follow it. Since then, however, the Court has relaxed the strictness of this interpretation and held that one on parole is in 'custody' within the meaning of the term as used in 28 U.S.C.A. 2241. Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963). Still later, the Court, in broad terms, equated 'custody' with 'restraint of liberty.' Fay v. Noia, 372 U.S. 391, 427, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).
 
 
 7
 In light of these progressively developing notions as to the scope of the writ of habeas corpus, there is reasonable ground for thinking that were the Supreme Court faced with the issue today, it might well reconsider McNally and hold that a denial of eligibility for parole is a 'restraint of liberty' no less substantial than the technical restraint of parole. Indeed, in Jones v. Cunningham, 371 U.S. 236, 243, 83 S.Ct. 373, 377, the Court said: '(Habeas corpus) is not now and never has been a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose-- the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty.' Several states have already adopted this view, expanding in recent years the concept of habeas corpus to permit a prisoner to litigate his right to liberty at a future date.[2]
 
 
 8
 We therefore hold, in keeping with the spirit of these developments, that because Martin's escape and larceny convictions bar his eligibility for parole, he is 'in custody' within the meaning of 28 U.S.C.A. 2241.
 
 
 9
 Indeed, we are persuaded that from a practical point of view the convictions for escape and larceny are the real, effective basis of Martin's continuing detention in a penal institution instead of his being at large, relatively free, though under parole supervision, pursuing his occupation and contributing to the economic and social well-being of his family and his community. Martin alleged in his petition that, prior to his conviction of murder in the second degree, he had no criminal record and had been a law abiding and productive citizen. He further alleges that he is informed that the parole board would not penalize him substantially for the escape, under the circumstances under which it occurred, or the theft of the vehicle in the course of the escape, if the board were not deprived of discretion by reason of the convictions based upon them. There is thus every reason for the court to assume that the parole board would look with favor upon Martin's application if it were given an opportunity to do so, and that he would be actually paroled upon becoming eligible for it, or soon thereafter.
 
 
 10
 We do not suggest, however, that the principle we glean from Jones v. Cunningham as applied by us today should be limited to one such as Martin who is able to state a strong case for parole consideration. But here, the subsequent convictions which cause the vast difference between continued confinement without eligibility for consideration for parole and conditional release are in the truest sense a present restraint upon Martin's liberty.
 
 
 11
 The habeas corpus remedy being available, it becomes unnecessary to consider whether the Declaratory Judgment Act may or may not in some circumstances be used to determine the validity of a state criminal conviction.
 
 
 12
 The 'Motion for Declaratory Judgment' will therefore be treated as a petition for writ of habeas corpus, and the case remanded to the District Court for a hearing on the petition.
 
 
 13
 Reversed and remanded.
 
 
 
 [1]
 The prison records show that the fifteen-year sentence for murder imposed on June 15, 1960, will expire on January 7, 1970, apparently taking into account statutory industrial and good time allowances. Had Martin not been convicted of escape and larceny, he would have been eligible for parole in 1963. However, the five and three year sentences received as a result of these convictions as well as the murder sentence are now considered in computing his parole eligibility, with the result that Martin is now ineligible for parole until 1966, four years before the murder sentence expires
 
 
 [2]
 In re Chapman, 43 Cal.2d 385, 273 P.2d 817 (1954); People ex rel. Prosser v. Martin, 208 Misc. 875, 148 N.Y.S.2d 472 (1952), aff'd, 281 App.Div. 1008, 121 N.Y.S.2d 574, (4th Dept. 1953), aff'd, 306 N.Y. 710, 117 N.E.2d 902 (1954). Oregon has abandoned the requirement of custody in its Post-Conviction Hearing Act, Ore.Rev.Stats. 138.510, 138.560, 138.570, while the Maryland courts have lately construed the Maryland Post-Conviction Procedure Act, Art. 27, 645A, to permit attack on a sentence not yet being served. Simon v. Director, 235 Md. 626, 201 A.2d 371 (1964); Roberts v. Warden, 221 Md. 576, 155 A.2d 891 (1959)