372 F.2d 216
 Alphonso Russell WILLIAMS, Appellant,
v.
C. C. PEYTON, Superintendent of the Virginia State Penitentiary, and Charles P. Chew, James W. Phillips, and Pleasant Shields, members of the Virginia Parole Board, Appellees.
 No. 10831.
 United States Court of Appeals Fourth Circuit.
 Argued December 8, 1966.
 Decided January 26, 1967.
 
 John J. Kirby, Jr. (Court-assigned counsel), for appellant.
 Reno S. Harp, III, Asst. Atty. Gen. of Virginia (Robert Y. Button, Atty. Gen. of Virginia, on brief), for appellees.
 Before HAYNSWORTH, Chief Judge, and WINTER and CRAVEN, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 In Martin v. Commonwealth of Virginia, 349 F.2d 781 (4 Cir. 1965), we held that habeas corpus was available to a prisoner incarcerated under a sentence, the validity of which he did not question, to litigate the validity of other convictions which deferred his eligibility for consideration for parole on the unquestioned sentence. We now conclude that the same principle is applicable to one who is already eligible for consideration for parole on a sentence which he does not question, but whose chances for parole are manifestly restricted by the fact of other convictions and unserved sentences thereon, allegedly invalid.
 
 
 2
 In 1956, appellant, then a juvenile, was charged with four separate offenses of robbery. He was taken before the Juvenile and Domestic Relations Court of the City of Norfolk on May 31, 1956 for a hearing. Proceedings before that court, allegedly irregular, resulted in his being referred to the Corporation Court of the City of Norfolk, Part Two, for further criminal proceedings. There, he was indicted in three cases of robbery and one of attempted robbery. Counsel was appointed and, in due course, he pleaded guilty to each of the four indictments, waived a jury, and was found guilty on each. Appellant was sentenced to eight years in one case, with concurrent sentences of eight and three years, respectively, in two of the other cases. In the fourth case he was sentenced to eight years, but service of four years of that sentence was suspended. When he arrived at the state penitentiary, his aggregate sentences amounted to eleven years and eight months, after giving him credit for the time he was incarcerated awaiting trial.
 
 
 3
 In 1960, appellant was paroled but, on February 15, 1963, while on parole, he was convicted of a separate and unrelated crime of robbery and sentenced to serve a term of six years in the state penitentiary. He was received at the institution on March 8, 1963 and later escaped from the penitentiary and, on December 13, 1963, was sentenced to serve a term of one year for escape. He also lost his good time credit of three months and five days by reason of his escape.
 
 
 4
 Thirteen days after having been received in the penitentiary for the 1963 robbery conviction, the parole from the 1956 sentences was revoked. At that time appellant had five years six months and thirteen days of the 1956 sentences remaining to be served.
 
 
 5
 Before he was eligible for parole from his 1963 sentence, appellant filed an application for a writ of habeas corpus in the Corporation Court of the City of Norfolk, Part Two, alleging the invalidity of his 1956 convictions on the grounds, inter alia, that, in violation of Va.Code Ann. § 16.1-166 et seq. the Juvenile and Domestic Relations Court and the Corporation Court of the City of Norfolk lacked jurisdiction over him, because his parents had neither been summoned nor were they present during the proceedings against him, he had not been appointed counsel, no guardian ad litem had been appointed, and other irregularities had occurred at that time. As one defense to the petition, the Commonwealth asserted that, under Virginia law, appellant was serving his 1963 sentence, not the 1956 sentences, and that the writ of habeas corpus was not available to him since he was not entitled to be released. Notwithstanding this defense, the trial court found that the Virginia statutes had not been complied with in the proceedings when appellant was a juvenile, and that the courts convicting him lacked jurisdiction.[1] The court ordered appellant's release and the Commonwealth appealed.
 
 
 6
 Finding that appellant, at the time of his state application for a writ of habeas corpus, was serving his 1963 sentence because he had been lodged in the penitentiary under the 1963 sentence before the parole on the 1956 sentences had been revoked, the Supreme Court of Appeals of Virginia reversed the order for release, on the ground that appellant could not question the validity of the 1956 sentences since he was not serving them. In regard to the scope of the writ of habeas corpus under Virginia law, the court, relying on McDorman v. Smyth, 187 Va. 522, 47 S.E.2d 441 (1948); Smyth v. Holland, 199 Va. 92, 97 S.E.2d 745 (1957); Smyth v. Midgett, 199 Va. 727, 101 S.E.2d 575 (1958); and McNally v. Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238 (1934), stated that the writ of habeas corpus was available only where the release of the prisoner from his immediate detention would follow as a result of an order in his favor. Under this view, the writ was not, therefore, available to secure a judicial determination which, even if decided in favor of the prisoner, could not affect the lawfulness of his immediate custody and detention. The court then noticed our decision in Martin v. Commonwealth of Virginia, supra, but declined to follow it.[2]
 
 
 7
 The opinion of the Supreme Court of Appeals of Virginia was announced November 29, 1965. On the preceding day, appellant became eligible for parole on all sentences, valid or invalid. Having been denied relief by the state courts, appellant, on July 5, 1966, sought a writ of habeas corpus from the district court. The court summarily denied it, without answer or plenary hearing, noting that appellant became eligible for parole on November 28, 1965, and distinguishing Martin solely because of that fact. We reverse and remand the case to the district court for determination on the merits of appellant's attack on his 1956 sentences.
 
 
 8
 At the outset, we must deal with the contention advanced by the Commonwealth that appellant has failed to exhaust the remedies available in the courts of the State of Virginia. 28 U.S. C.A. § 2254. It is argued that the Supreme Court of Appeals of Virginia has not passed on the question as to whether it will regard our decision in Martin as persuasive in defining the scope of the writ of habeas corpus under Virginia law. Accordingly, so the argument runs, appellant should file a petition in the Supreme Court of Appeals of Virginia for clarification of its opinion in his case and a specific ruling on whether that doctrine is part of the law of Virginia and is applicable to him. We find the contention without merit because, as we understand the history of the proceedings, application of Martin to state law was directly presented to the Supreme Court of Appeals of Virginia and decided adversely to petitioner in the portion of the opinion which we have quoted in footnote 2. Martin is not a binding precedent as to how state law must be determined by a state court, although some state courts have found it persuasive.[3] Virginia's failure to be persuaded does not discharge us from our responsibility to construe the federal habeas corpus statute in accord with federal principles. We turn, therefore, directly to the merits of the appeal.
 
 
 9
 In Martin, the prisoner did not challenge the conviction on which had been imposed the sentence he was serving time at the time he sought a writ of habeas corpus. His attack was aimed at the sentences imposed upon two subsequent convictions, service of which was to begin after the service of his admittedly valid sentence. It was found that, if the two challenged convictions were upset, he would be eligible for parole; it thus appeared that only these convictions stood between him and an opportunity for parole. The question for decision was whether he could litigate the validity of the two subsequent convictions on an application for habeas corpus, although he was not, at the time the application for the writ was filed, serving those convictions.
 
 
 10
 In holding that habeas corpus was available to Martin, we pointed out that the federal habeas corpus statute, 28 U.S. C.A. § 2241, conditions availability of the writ to a person who is "in custody in violation of the Constitution * * * of the United States." We noted that McNally v. Hill, supra, decided that a sentence which a prisoner had not begun to serve did not satisfy the statutory requirement of "custody," even though a result of the challenged sentence was to thwart the prisoner's eligibility for parole. It was our view, however, that Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963), and Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), had eroded the apparently flat holding in the McNally case to the extent that we concluded that Martin's two subsequent convictions, barring his eligibility for parole, rendered him "in custody" within the meaning of 28 U.S.C.A. § 2241. We added, "We do not suggest, however, that the principle we glean from Jones v. Cunningham as applied by us today should be limited to one such as Martin who is able to state a strong case for parole consideration." Id., 349 F.2d p. 784 (emphasis supplied).
 
 
 11
 Since Martin, we have decided Tucker v. Peyton, 357 F.2d 115 (4 Cir. 1966), and Mathis v. United States, 369 F.2d 43 (4 Cir. 1966). In Tucker, we held that a state prisoner could resort to habeas corpus to attack sentences he had fully served without questioning the validity of the sentence under which he was then being held, on the theory that if the earlier sentences were invalid his commencement of service of subsequent sentences would be advanced. In arriving at this result, we rejected a claim of prematurity advanced there, as is advanced in the case at bar.[4] We also rejected a claim of mootness, as is advanced in the case at bar. Tucker filed a petition to question the invalidity of the expired sentence a few days before its expiration. We held that this did not bar him from questioning the validity of that sentence. In the case at bar, Williams sought state court relief before he became eligible for consideration for parole on his aggregate sentences. It it true that he became eligible for parole before he sought relief from the district court, but, in the light of our insistence that a state prisoner must exhaust state remedies where they are effective and available, we would be reluctant to conclude that a prisoner lacks standing here, because he complied with this requirement.
 
 
 12
 The Mathis case explored the scope of the writ of error coram nobis. The significance of the decision here is that the writ was afforded the breadth which modern cases attribute to a writ of habeas corpus, and it was held that one in custody under a valid state sentence could attack collaterally by writ of error coram nobis a concededly invalid federal sentence to be served after expiration of the state sentence where the fact of the federal sentence would prevent his immediate release upon completion of his state sentence. Again, we considered Jones v. Cunningham, supra, and concluded that the scope of a writ of habeas corpus "* * * has grown to achieve its grand purpose — the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty." Jones v. Cunningham, supra, 371 U.S. at p. 243, 83 S.Ct. at p. 377.
 
 
 13
 Williams is eligible for consideration for parole at this time, but we would be blind to the practicalities of the matter if we were to conclude that the likelihood of his being paroled is not more remote when the records show that he has been convicted six times and sentenced to an aggregate of nineteen years, 33 1/3% of which has been served, than if they were to show that he had been convicted twice and sentenced to a term of seven years, 60% of which has been served. The weight to be afforded these factors is a matter for the parole board. It is, of course, true that the parole board may conclude that Williams should not be paroled, even if his 1956 convictions are set aside and he is not retried, but we must conclude that the number of convictions and aggregate sentences are factors which every parole board probably considers in regard to any prisoner seeking parole, and we cannot expect that the parole board has either the jurisdiction or the authority to inquire into the correctness of any conviction. That function is ours unless we conclude that we are presently impotent to perform it. In Martin we had no assurance that the prisoner would be paroled if his subsequent convictions were found invalid and set aside. The mere possibility that Martin's chances for obtaining some limited form of freedom more rapidly was enough to persuade us to allow the challenge. The same factor motivates us here.
 
 
 14
 We conclude, therefore, as we did in Martin, that the presence of other convictions may be a real, effective basis of appellant's continuing detention in a penal institution instead of his being at large, relatively free, though under parole supervision, pursuing his occupation and contributing to the economic and social well-being of himself and his community. That such a possibility is enough to warrant availability of the writ of habeas corpus to inquire into the validity of the 1956 convictions has been recognized in other cases. State ex rel. Holm v. Tahash, 272 Minn. 466, 139 N.W.2d 161 (1965); State v. Losieau, 180 Neb. 696, 144 N.W.2d 435 (1966). See also, United States ex rel. Foreman v. Fay, 184 F.Supp. 535 (S.D.N.Y.1960); United States ex rel. LaNear v. LaVallee, 306 F.2d 417 (2 Cir. 1962). Appellant is, we conclude, "in custody" within the meaning of 28 U.S.C.A. § 2241.
 
 
 15
 It cannot be stressed too strongly that in expanding eligibility for use of the writ of habeas corpus as we do in the case at bar we afford to the Commonwealth and to society, albeit unwillingly on their part, a measure of protection which their contention would have us ignore. In the case at bar, the Commonwealth admits that appellant could question the validity of his 1956 convictions at such time as he has fully served his 1963 sentence and the subsequent sentence for escape. Should appellant be successful at that time, inevitably, the Commonwealth would have an opportunity to retry appellant for his alleged 1956 crimes. Under such circumstances, it is to the benefit of all that the validity of the 1956 convictions be determined now, so that, if appellant is to be retried he may receive a trial in which the conflicting claims of society and his claim to liberty may be properly adjudicated. To the extent that the validity of the 1956 convictions may be disputed, what we said in Mathis is pertinent.[5] If appellant's 1956 convictions are set aside and appellant is granted a retrial, the comments of the Supreme Court of Pennsylvania in Commonwealth ex rel. Stevens v. Myers, 419 Pa. 1, 213 A.2d 613 (1965), are worthy of note. There, it was pointed out that delay may cause either the Commonwealth or the petitioner to forfeit the hearing [on habeas corpus] or retrial [of the substantive case] without regard to the merits of the case. Cogently, the court declared:
 
 
 16
 "* * * The heaviest detriment comes to the Commonwealth. Upon a retrial, the Commonwealth has the traditional burden of proving the elements of its case beyond a reasonable doubt and meeting that burden obviously becomes more onerous ten or twenty years after the commission of the crime. To that extent time is not neutral but, rather, operates in such instances to the advantage of the accused." Id., 213 A.2d 621-622.[6]
 
 
 17
 Appellant, relying on Peyton v. French, supra, footnote 1, contends that we should order his immediate retrial on the alleged 1956 crimes. This, however, we cannot do. The district court denied appellant's petition for writ of habeas corpus summarily. It had before it neither the record nor the opinion of the state trial judge who issued the writ. The Supreme Court of Appeals dealt with the instant case only procedurally, and not on the merits. Its opinion makes only fleeting reference to the opinion of the state trial court and expressly reserves any opinion on the merits of the case. We are, therefore, unable to determine whether the state court nullified Williams' juvenile convictions correctly and on the same basis found adequate in the French case, supra.
 
 
 18
 We remand the case to the district court for further proceedings. The district court, on remand, may require the production of the record in the state habeas corpus proceeding and may conclude to grant appellant immediate relief on the basis of it, or may conclude to receive additional evidence. We hold only that the district court should appoint counsel to represent appellant and grant him a plenary hearing, the scope of which shall be as the circumstances warrant.
 
 
 19
 Reversed and remanded.
 
 
 
 Notes:
 
 
 [1]
 If the factual resolution of appellant's contentions by the trial court is accepted, the correctness of its legal conclusion is confirmed by the subsequent decision in Peyton v. French, 207 Va. 73, 147 S.E.2d 739 (1966). There it was held that irregularities in the proceedings under the Juvenile and Domestic Relations Court Law were jurisdictional, and not merely procedural, and operated to oust the juvenile court of jurisdiction, thus rendering a subsequent conviction invalid. Since French became an adult prior to his obtaining post conviction relief, he was ordered retried as an adult
 
 
 [2]
 The Court stated:
 "We are aware that the concept of the scope of the writ of habeas corpus has been expanded in recent years by statutes and court decisions in some of the States, and by the Federal courts with regard to what constitutes `detention' or `custody.' Jones v. Cunningham, supra, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285, and Martin v. Commonwealth of Virginia (Peyton, Superintendent, etc.), 4 C.C.A., 349 F.2d 781, decided August 5, 1965. However, we think that habeas corpus is not applicable to the peculiar facts and circumstances of this case under our statutes and decisions." Peyton v. Williams, 206 Va. 595, 145 S.E.2d 147, 151 (1965). The court did not elaborate on the "peculiar facts and circumstances" which made our holding in Martin inapposite.
 
 
 [3]
 Commonwealth ex rel. Stevens v. Myers, 419 Pa. 1, 213 A.2d 613 (1965); State ex rel. Holm v. Tahash, 272 Minn. 466, 139 N.W.2d 161 (1965); State v. Losieau, 180 Neb. 696, 144 N.W.2d 435 (1966)
 
 
 [4]
 We said, "* * * the general principle that an applicant for habeas corpus cannot succeed unless he is entitled to immediate release cannot be distorted to foreclose all remedies or to prevent judicial review of administrative inclusion of invalid sentences in the computation of sentence service." Id., p. 118
 
 
 [5]
 "Were prisoners required to complete their service of current prison terms before challenging the validity of future sentences, the effectiveness of the post-conviction remedy would be drastically attenuated. The judicially prescribed tool for the development of the perceptual facts underlying a prisoner's claim that his conviction is constitutionally defective is a plenary hearing in the trial court. To insure that his hearing shall provide an accurate reflection of events, the memories of witnesses will have to be probed, and past states of mind reconstructed. Inordinate delay of the hearing may make it difficult, if not impossible, to secure the presence of witnesses who may in the meantime have disappeared or died. Even if the witnesses are still available, an accurate picture of what occurred may be well nigh impossible to attain." Id., 369 F.2d at p. 49. (footnotes eliminated)
 
 
 [6]
 The court added:
 "The prematurity concept as applied to petitions collaterally attacking convictions only aggravates these already acute problems. In return for its serious disadvantages, the concept has little to recommend it except the historical lineage of the writ as used in other instances. We do not believe that mere historical considerations, now outdistanced by modern conditions, should be allowed to control the scope of a writ which in this state is clearly adaptable to the exigencies of the times when the writ is used in a new class of cases." Id., p. 622.