William Joe **JOHNSON**, Petitioner-Appellee,

v.

**Harry S. AVERY**, Commissioner of Correction, and **C. Murray Henderson**, Warden, Tennessee State Penitentiary, Respondents-Appellants.

No. 17292.

United States Court of Appeals
Sixth Circuit.

Aug. 31, 1967.

Henry C. Foutch, Asst. Atty. Gen. of Tennessee, Nashville, Tenn. (George F. McCanless, Atty. Gen., and Reporter of Tennessee, of counsel), for appellants.

Pierce Winningham, III, Nashville, Tenn., for appellee.

Before WEICK, Chief Judge, PECK, Circuit Judge, and CECIL, Senior Circuit Judge.

WEICK, Chief Judge.

The crux of this case is the question of validity of a regulation of the Tennessee State Penitentiary at Nashville, which prohibits any inmate from advising or assisting other prisoners in the preparation or filing of writs of habeas corpus or other legal papers.[1] The regulation was promulgated and enforced by the defendants-appellants in their official capacities as Commissioner of Correction of the State of Tennessee and Warden of the State Penitentiary, respectively.

After being subjected to punishment for repeated violations of the rule, usually by confinement in the "maximum security building" of the prison, petitioner filed a "motion for law books and a typewriter", which the District Court treated as an application for a writ of habeas corpus, and granted. The prison authorities appealed.

The District Court reasoned that because the words of the habeas corpus statute, 28 U.S.C. § 2242, authorized the filing of an application for a writ of habeas corpus "signed and verified by the person for whose relief it is intended *or by someone acting in his behalf*" (emphasis added), the prison regulation conflicted with the Federal law. The District Court further held that unless petitioner could continue to serve as a

---

[1]. Guidance Manual for Prisoners, Sec. VI, page 7:

"No inmate will advise, assist or otherwise contract to aid another, either with or without a fee, to prepare Writs or other legal matters. It is not intended that an innocent man be punished. When a man believes he is unlawfully held or illegally convicted, he should prepare a brief or state his complaint in letter form and address it to his lawyer or a judge. A formal Writ is not necessary to receive a hearing. False charges or untrue complaints may be punished. Inmates are forbidden to set themselves up as practitioners for the purpose of promoting a business of writing Writs."

"writ writer" or "jailhouse lawyer" for his fellow inmates, their constitutional rights to the effective aid of habeas corpus would be endangered since "without the assistance of some third party, many prisoners in the state penitentiary would be totally incapable of preparing an intelligible petition, letter or request". We must disagree with both of these conclusions.

At the outset, we agree with the holding of the District Court that petitioner has standing to question the validity of the regulation. While defendants urge that petitioner himself has never been denied the right to file petitions on his own behalf in Federal or state courts, it seems clear that he has been subjected to a restraint upon his liberties unauthorized by the life sentence he is serving. In such a case, habeas corpus will lie to inquire into the lawfulness of this added punishment, even though it will not result in his unconditional release from prison. Martin v. Commonwealth of Virginia, 349 F.2d 781 (4th Cir. 1965); Coffin v. Reichard, 143 F.2d 443, 155 A.L.R. 143 (6th Cir. 1944) cert. denied 325 U.S. 887, 65 S.Ct. 1568, 89 L.Ed. 2001 (1945).

The perspective through which we view this question, even though it seems one of first impression, must be framed by the well-established reluctance of the Federal Courts to intervene in internal affairs of state or Federal penal institutions. Regulations for the administration and discipline of prisons, promulgated and enforced by duly authorized officials, are not subject to review by the courts unless it can be clearly demonstrated that they interfere with fundamental rights guaranteed by the Constitution. United States v. Marchese, 341 F.2d 782 (9th Cir. 1965) cert. denied 382 U.S. 817, 86 S.Ct. 41, 15 L.Ed.2d 64 (1965); McCloskey v. State of Maryland, 337 F.2d 72 (4th Cir. 1964); Kirby v. Thomas, 336 F.2d 462 (6th Cir. 1964); Sostre v. McGinnis, 334 F.2d 906 (2nd Cir. 1964) cert. denied 379 U.S. 892, 85 S.Ct. 168, 13 L.Ed.2d 96 (1964); Childs v. Pegelow, 321 F.2d 487 (4th Cir. 1963)

cert. denied 376 U.S. 932, 84 S.Ct. 702, 11 L.Ed.2d 652 (1964); Hatfield v. Bailleaux, 290 F.2d 632 (9th Cir. 1961) cert. denied 368 U.S. 862, 82 S.Ct. 105, 7 L.Ed. 2d 59 (1961); Siegel v. Ragen, 180 F.2d 785 (7th Cir. 1950) cert. denied 339 U.S. 990, 70 S.Ct. 1015, 94 L.Ed. 1391 (1950).

This proposition is soundly based on the fact that prison administration is a function of the executive branch of the Government and one for which the courts, with their limited experience and facilities, are ill-suited to undertake. Further, in this case the imperatives of our Federal system require special concern for the boundaries of state and Federal governmental competence as allocated by our basic charter.

An important additional consideration here is the undisputed right of individual states to specify the qualifications for entrance to their respective bars and to regulate the practice of law within their borders. Konigsberg v. State Bar of California, 366 U.S. 36, 81 S.Ct. 997, 6 L.Ed.2d 105 (1961); In re Anastaplo, 366 U.S. 82, 81 S.Ct. 978, 6 L.Ed.2d 135 (1961); In re Lockwood, 154 U.S. 116, 14 S.Ct. 1082, 38 L.Ed. 929 (1894); Bradwell v. State of Illinois, 83 U.S. (16 Wall.) 130, 21 L.Ed. 442 (1872); Emmons v. Smitt, 149 F.2d 869 (6th Cir. 1945) cert. denied 326 U.S. 746, 66 S.Ct. 59, 90 L.Ed. 446 (1945); Niklaus v. Simmons, 196 F.Supp. 691 (D.Neb.1961). See also Theard v. United States, 354 U.S. 278, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957); Williamson v. Lee Optical of Oklahoma, Inc., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

While the interests of the states are sometimes deemed less significant than those provisions of the Constitution upon which they may impinge, see Brotherhood of Railroad Trainmen v. Virginia, 377 U.S. 1, 84 S.Ct. 1113, 12 L.Ed.2d 89 (1964), NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963), Konigsberg v. State Bar of California, 353 U.S. 252, 77 S.Ct. 722, 1 L.Ed.2d 810 (1957), Schware v. Board of Bar Examiners of New Mexico, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957), it is in-

teresting to note that in all cases where the state's regulatory power was limited in deference to Constitutional standards, the practitioners involved were all concededly qualified to practice law by previous academic training. In no case has the Constitution been read to grant an untrained and unlicensed person the right to practice law.

The State of Tennessee has enacted a series of statutes governing qualification and admission to the practice of law, T.C.A. §§ 29–101 to 29–110; the rights and duties of attorneys, T.C.A. §§ 29–201 to 29–204; and unauthorized practice and improper conduct, T.C.A. §§ 29–301 to 29–312. These sections include provisions for court assignment of counsel for paupers, permission for any party to conduct his own case, prohibitions upon the unlawful practice of law, and penalties for falsely representing oneself as an attorney. Petitioner does not allege that he has complied with any of these laws, despite the fact that his activities clearly constitute unlawful practice in Tennessee [2].

In essence, then, the ruling of the District Court allows petitioner to engage in activity in the state prison which would constitute a crime if conducted outside the penitentiary. (There seems to be little question that petitioner, a convicted felon, could ever obtain a license to practice in state or Federal Courts even if he had the required legal education, which he does not have.)

The main thrust of the District Court's opinion on this issue was that petitioner's services are needed to make other prisoners' rights to habeas corpus effective in light of their own limited abilities. We believe that on closer analysis this right to effective post-conviction procedures does not warrant so drastic a limitation on the power of the state to regulate discipline in its penal institutions and to control the practice of law within its borders.

While we agree that representation by counsel may be a significant part of the post-conviction remedy, it is important to recognize that the Supreme Court has not yet held that it is an indispensable element of due process under the Constitution. Several circuits have stated the advisability of appointing counsel. Taylor v. Pegelow, 335 F.2d 147 (4th Cir. 1964); Dillon v. United States, 307 F.2d 445 (9th Cir. 1962); United States ex rel. Wissenfeld v. Wilkins, 281 F.2d 707 (2d Cir. 1960). However, it is not required in every such case, Barker v. State of Ohio, 330 F.2d 594 (6th Cir. 1964). In any event, the Federal Courts have power to appoint counsel for indigents in proceedings before them to assure the protection of the indigents' rights. 28 U.S.C. § 1915(d).

The same concern for effectuating basic Constitutional rights through representation by counsel, which motivated the District Court in this case, is evidenced in recent cases in which the Supreme Court has defined the need for counsel in "critical" pre-trial stages, Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), as well as at trial, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

Yet in none of those cases did the Court indicate that these rights could be protected through representation by a layman. To the contrary, the Court has consistently emphasized that it is representation *by trained counsel* which is necessary to take advantage of the full scope of an accused's rights and shield him from unfair tactics or his own ignorance.

2. T.C.A. § 29–302 defines the practice of law in Tennessee as follows:

"The 'practice of law' is defined to be and is the appearance as an advocate in a representative capacity or the drawing of papers, pleadings or documents or the performance of any act in such capacity in connection with proceedings pending or prospective before any court, commissioner, referee or any body, board, committee or commission constituted by law or having authority to settle controversies."

We agree with this approach to the problem of effectuating Constitutional rights both as to pre-trial events and post-conviction proceedings. Indeed, we believe that no favor is granted to the other prisoners by allowing them representation by one untrained in the complexities of post-conviction procedure and unrestrained by the values, ethics, and traditions of the bar. It takes little imagination to recognize possibilities of conflict of interest in allowing one who is a convicted murderer, rapist or burglar, serving a long sentence, to represent prisoners who have possible meritorious claims.

■ We do not agree with the District Court that "[b]y preparing petitions for other prisoners, the petitioner is certainly acting in their behalf." Neither the language nor the policy of 28 U.S.C. § 2242 justifies such a conclusion.

■■ The provision of the law authorizing someone to act on behalf of a prisoner whose release is sought, relates only to the act of signing or verifying the petition, and we do not interpret that authorization to include the preparing of legal papers and serving as an attorney in violation of state law. In addition, the inability or incompetency to which this section is addressed is not the inability to draft legal papers as the District Court seems to hold. Most laymen lack that ability and it would hardly be necessary to include a special provision of law to authorize the employment of trained legal assistance in preparing papers. It seems clear that the situation to which this provision was meant to apply, is one where physical or mental handicaps prevent the prisoner from personally signing or verifying the petition, not one wherein lack of intelligence or legal training keep him from drafting his own papers. See United States ex rel. Bryant v. Houston, 273 F. 915 (2d Cir. 1921).

■ The problem of providing effective access to legal assistance at all stages of criminal justice, from pre-trial to post-conviction, certainly deserves the concern which the District Court showed in this case. However, its solution is more likely to be assured if it is attended to by the bench, bar, and law schools rather than left to the *ad hoc* procedures sanctioned in the District Court.

Reversed.