JORGE ENRIQUE ACOSTA LINARES, Petitioner and Appellant, *v.* GERARDO DELGADO, ETC., Respondent and Appellee.

No. O-67-218.     Decided June 28, 1968.

*E. Armstrong Watlington, Enrique Miranda Merced,* and *Julio García Antique* for appellant. *J. F. Rodríguez Rivera, Acting Solicitor General,* and *Peter Ortiz, Assistant Solicitor General,* for appellee.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

On April 7, 1967, date on which appellant Jorge Enrique Acosta requested the trial court's protection by way of habeas corpus to question the legality of the sentence of from 10 to 13 years in the penitentiary imposed on him for the offense

of a subsequent escape, appellant was also serving consecutive sentences which had been previously rendered as indicated below:[1]

(a) burglary in the first degree, four sentences of from 2 to 5 years, September 3, 1963;[2]

(b) attempt to commit burglary in the first degree, 1 to 3 years in the penitentiary, October 4, 1963;

(c) attempt to escape, two months in jail, February 17, 1964.

From the foregoing it is inferred that (a) appellant was confined by virtue of sentences the validity of which is not challenged, but (b) if the sentence of from 10 to 13 years, which is challenged, is void, there is the possibility that the Parole Board can assume jurisdiction in his case.[3]

1—We should previously consider the question of whether the appeal is premature.[4]

---

[1] From an examination of the original record, it does not appear that a return to the writ of habeas corpus was filed. The information on the sentences which appellant was serving has been obtained from the information filed against him for subsequent escape.

[2] Assuming that he had not been given any credit whatsoever while in custody awaiting trial for reducing the term of the sentences, on April 7, 1967 the maximum term of the first sentence of from 2 to 5 years in the penitentiary had not been served. At that time he had been imprisoned for a term of 3 years 7 months and 4 days; granting him the corresponding reductions according to § 1 of the Act of March 14, 1907, 4 L.P.R.A. § 633, which was then in force, such turn would be reduced to 3 years 8 months.

The situation in the present has varied not only because of the additional time elapsed, but also because of the possibility that it may be proper to grant him a greater reduction, according to the provisions of Act No. 72 of May 26, 1967, 4 L.P.R.A. §§ 636a–636e. But in any event, he has not fully served his sentences.

[3] When a person has been sentenced to more than one indeterminate sentence whether they be served concurrently or consecutively, the Parole Board shall acquire jurisdiction when the individual has served a prison term equal to the longest minimum. Section 2 of Act No. 295 of April 10, 1946, as amended, 34 L.P.R.A. § 1025; *Lebrón Pérez* v. *Warden, District Jail*, 91 P.R.R. 550 (1964); *Gutiérrez* v. *Delgado, Warden*, 86 P.R.R. 309 (1962).

[4] The district attorney called the trial judge's attention to the particular, when he discovered in the course of appellant's cross-examina-

In *Méndez* v. *Delgado, Warden*, 83 P.R.R. 178 (1961), we formally adopted in this jurisdiction the doctrine on the premature filing of the writ of habeas corpus when we held that the writ does not lie to set aside a sentence which has not yet been served due to the fact that petitioner is serving another sentence for which his imprisonment is lawful.[5] We adduced that the purpose of the writ is to investigate the lawfulness of the arrest with a view to granting the remedy of release from jail, if the same is illegal or of admitting him to bail in appropriate cases. We then set forth that "The writ of habeas corpus may not be used as a means of securing judicial decisions which shall not affect petitioner's custody or arrest." Subsequently in *Coll Moya* v. *Warden, Municipal Jail*, 89 P.R.R. 221, 233 (1963), we ratified the rule. We re-examined it.

An identical rule had been established for the federal jurisdiction by the Supreme Court of the United States in *McNally* v. *Hill*, 293 U.S. 131 (1934), which is the authority cited in *Méndez*. After tracing its genealogy in the English common law and after making reference to its constitutional history, it is set forth that according to its traditional heritage the disposition of the convict's custody is the only thing put in issue in the writ of habeas corpus with a view to granting his immediate discharge from jail. The use of the writ is prohibited to obtain judicial determinations on the validity of a conviction which, even if decided in favor of petitioner, does not lead to his immediate release. It is con-

---

tion that the latter was serving valid sentences. The court preferred to continue taking cognizance of the matter. Tr. Ev. 7–9.

[5] From the onset of our case law, in *Ex parte Rodríguez*, 3 P.R.R. 553 (1903), we had applied the same rule, but it is in *Méndez* v. *Delgado, Warden, supra*, where we set forth for the first time the grounds which justified it. We expressed ourselves in the same sense in *Ex parte Rivera*, 4 P.R.R. 189 (1903); *Ex parte Nazario*, 8 P.R.R. 438 (1905); *Ex parte Texidor*, 8 P.R.R. 508 (1905); and *Vázquez* v. *Rivera*, 70 P.R.R. 203, 209 (1949); cf. *Díaz* v. *Campos*, 81 P.R.R. 975 (1960).

cluded that neither the history of the appeal nor the language of the statutes which authorizes its issuance indicates the purpose of enlarging "its traditional function" (at p. 138).[6] Oaks, *Habeas Corpus in the States—1776–1865*, 32 U. Chi. L. Rev. 243 (1965).

We note that this doctrinal interpretation on the scope of habeas corpus in the federal sphere is not decisive in our purpose of elaborating on the rule which we deem more convenient and desirable in Puerto Rico, although the historical background in which it is exclusively based may serve as a starting point. It is necessary to consider also that the rule has been submitted to a process of erosion when the federal courts were faced with unforeseen situations at the time of the genesis of the writ and its further development until its incorporation into the federal procedural laws. Note, *The Expanding Use of Federal Habeas Corpus*, 61 Harv. L. Rev. 657 (1948). In *Martin* v. *Virginia*, 349 F.2d 781 (4th Cir. 1965), the writ was authorized to investigate the validity of future sentences which precluded the consideration for parole in the case of a sentence which was being served. See also, *Williams* v. *Peyton*, 372 F.2d 216 (4th Cir. 1967); Note, *Habeas Corpus and the Prematurity Rule*, 66 Calif. L. Rev. 1164 (1966). Recently in *Rowe* v. *Peyton*, 383 F.2d 709 (4th Cir. 1967), the *McNally* rule is criticized as being ineffective and the ideas in the context of the writ, prevailing in the Seventeenth Century, are rejected as being inappropriate due to the writ's technical conceptualism to face the problems of the present time. They went as far as fore-

---

[6] See, *Ex parte Hull*, 312 U.S. 546 (1941), in which *McNally* v. *Hill*, *supra*, is distinguished; *Heflin* v. *United States*, 358 U.S. 415 (1959), particularly the concurring opinion of Mr. Justice Stewart, at p. 421; and *Jones* v. *Cunningham*, 371 U.S. 236 (1963).

A limited exception to the rule has been recognized when the effects of a suspended sentence or the benefits of a parole are reversed due to a subsequent conviction. *Wilson* v. *Gray*, 345 F.2d 282 (9th Cir. 1965). *Cf.* *Watson* v. *Myers*, 250 F.Supp. 292 (E.D. Pa. 1966).

casting that the federal Supreme Court shall dismiss it.[7] *Cf. Walker* v. *Wainwright,* 390 U.S. 335 (decided on March 11, 1968).

The same thing occurs in state jurisdictions. A definite trend is observed to enlarge the scope of the petition so as, to permit its use in the attack of sentences which have not yet been begun to be served. *Commonwealth* v. *Myers,* 213 A.2d 613 (Pa. 1965); *State* v. *Burke,* 133 N.W.2d 753 (Wis. 1965); *State* v. *Tahash,* 139 N.W.2d 161 (Minn. 1965); *In re Estrada,* 408 P.2d 948 (Cal. 1966); *Ex parte Chapman,* 273 P.2d 817 (Cal. 1954); *cf. Simon* v. *Director of Patuxent Institution,* 201 A.2d 371 (Md. 1964). See, *The Uncertain Rules of Timeliness in Petitions for the Writ of Habeas Corpus,* 11 Vill. L. Rev. 589 (1966); Note, 52 Cornell L.Q. 149 (1966). To this end it is necessary at times to enlarge by fiction the meaning of the word detention. *The "Custody" Requirements for Habeas Corpus,* 26 Md. L. Rev. 79 (1966); Note, Duke L.J. 1966: 588.

█ Mere historical reasons should not be interposed in view of the great need to authorize the availability of habeas corpus to question future sentences. Even the greatest traditionalist must realize that at present the writ has gained exceptional importance as a vehicle par excellence to attack collaterally the sentences in the presence of the judicial acknowledgment of a series of rights that defendant has and which are protected constitutionally by the due process of law in the pretrial stage as well as during the trial, and that in a great measure the original concept of trespassing of jurisdiction by the trial court has expanded to unimaginable limits. Procedural requirements demand that full efficacy

---

[7] When this opinion was published on May 10, 1968, a petition to review the decision in *Rowe* v. *Peyton, supra,* 36 L.W. 3286, was pending before the Federal Supreme Court. At this time an opinion has already been rendered which reversed the rule of *McNally* for the federal courts. *Peyton* v. *Rowe,* 391 U.S. 54 (decided on May 20, 1968), 36 L.W. 4462.

be recognized to the writ of habeas corpus as a useful and adequate vehicle within the post-conviction remedies.[8] As a practical question, the delay, which would be caused till the prisoner begins to serve the sentence he is challenging, is prejudicial to both parties, to the state as well as to defendant, since in case a new trial is ordered, there exists the risk set forth of the disappearance or misplacement of the competent evidence, the inconsistency and weakness of the memory and recollections of the witnesses, and the possibility of the death of the stenographer who participated in the trial which culminated in the conviction. A prompt determination of the validity of a sentence is more germane to a more purified and efficient administration of justice. We would be iconolaters if in preserving the lineage of the writ—sole ground which was adduced in announcing the doctrine of prematurity—we would limit its efficacy in view of the modern requirements.[9]

The prematurity doctrine is not justified in this jurisdiction. We abandoned it. Any pronouncement to the contrary in our previous decisions is expressly overruled.

■ 2—It having been established that appellant could file the petition to challenge a sentence which he had not begun to serve, there remains for us to examine the error assigned.

---

[8] The existence, since 1967, of a proceeding subsequent to sentence, Rule 192.1 of the Rules of Criminal Procedure, which is parallel to the remedy which in many cases can be achieved by way of habeas corpus, does not detract from the need of re-examining the doctrine of prematurity. See, Act No. 18 of April 11, 1968 (Sess. Laws, p. 28) which amended § 469 of the Code of Criminal Procedure, 34 L.P.R.A. § 1741.

[9] The problems which arise at the margin of the consecutive and concurrent sentences and the systems of probation and parole, efficient instruments within the purpose of rehabilitating the delinquent which were unknown when the writ of habeas corpus was originated and developed, are a live example of the need of adapting the traditional writs to new circumstances. Only certain elasticity in the interpretation is required therefor.

It is alleged on the merits that it was not proper to punish appellant under § 56 of the Penal Code, 33 L.P.R.A. § 131, as a subsequent offense, but under § 152 corresponding to the offense of escape, 33 L.P.R.A. § 509. It is adduced that the latter contains its own aggravating circumstance—the express provision to the effect that the penalty imposed shall not be concurrent with any other—and punishment provided for subsequent offenses should not be resorted to. There is nothing to indicate that the lawmaker sought to exclude, with this provision, the possibility that the offense of escape would be punished as a subsequent one.[10] There is no conflict at all between both provisions.[11]

The judgment rendered by the Superior Court, Mayagüez Part, on May 22, 1967 will be affirmed.

Mr. Chief Justice Negrón Fernández did not participate herein. Mr. Justice Santana Becerra dissented in part in an opinion in which Mr. Justice Hernández Matos concurs.

—O—

MR. JUSTICE SANTANA BECERRA, with whom MR. JUSTICE HERNÁNDEZ MATOS concurs, partly dissenting.

San Juan, Puerto Rico, June 28, 1968

I dissent from that part of the judgment which sustains the appropriateness of the sentence as being subsequent.

Section 152 of the Penal Code as originally adopted, provided that every person who escaped from prison while serving sentence would be punishable *on summary order* of

---

[10] This provision was added by Act No. 9 of December 29, 1950 (Sess. Laws, p. 388) and was a direct result of the mass escape of the prisoners in the State Penitentiary which occurred in October 1950.

[11] We explain, incidentally, that not all violations of § 152 can be punished as subsequent offense, for the violation can be committed in custody while awaiting trial or while serving sentence during the pendency of an appeal, in which cases a subsequent offense cannot be charged.

the competent court by imprisonment for an additional minimum term of one-twentieth or maximum of one-fifth of the term of the original sentence. The previous provision was adopted contemporary to § 56 of the Penal Code concerning subsequent offenses and which provides that every person who having been convicted of any offense punishable by imprisonment in the penitentiary commits any crime, after such conviction, is punishable therefor in the manner stated in said section.

In 1950—Act No. 9 of December 29—and as a result of facts known by everybody, § 152 of the Penal Code was amended it being provided then that any person under lawful custody who escaped while under indictment, or during the pendency of an appeal, or while serving sentence, would be punishable *on summary order* of the District Court of Puerto Rico (Superior Court) by imprisonment for a term of from one to ten years in addition to the sentence imposed on him for the other offense or to the one he was serving, and such penalty would not be concurrent with any other.

By Act No. 447 of May 14, 1952, § 152 was amended again to provide that any person under lawful custody who shall escape while being held in restraint, or during the pendency of an appeal, or while serving sentence, shall be punishable *on summary order* of the District Court (Superior Court) in the following manner: (a) if while held in restraint, he shall be guilty of a misdemeanor, and be subject to imprisonment in jail; (b) if serving sentence for a felony, he shall be guilty of a felony; and (c) if serving sentence for a misdemeanor, he shall be guilty of a misdemeanor and be subject to imprisonment in jail. Concurrence is denied to the judgments rendered in conformance with the foregoing.

Historically, escape under lawful custody has been dealt with as a sui generis procedure. It has always been provided by the lawmaker that the person be punished *summarily* and by order. The Superior Court, before the District Court,

has been given original jurisdiction to entertain those cases even though a misdemeanor is involved. Because of the historical origin and the provision of § 152 as amended, in the absence of an affirmative legislative statement to the contrary, I believe that the penalties imposed in these proceedings for escape do not give rise to the allegation of subsequent offense pursuant to § 56 of the Penal Code.

I agree with appellant's counsel in that the lawmaker gave to the escape special aggravating consequences in prohibiting the concurrence of penalties, and I would recommend that appellant be sentenced again for the offense of escape according to the penalties set forth in § 152 of the Penal Code without considering the provision of § 56 of said Code.