**Ex parte Delma BANKS, Jr.**

No. 69302.

Court of Criminal Appeals of Texas, En Banc.

March 29, 1989.

Rehearing Denied April 19, 1989.

Clifton L. Holmes, Longview, for appellant.

Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

MILLER, Judge.

This is a rehearing on application for writ of habeas corpus pursuant to the provisions of Art. 11.07, V.A.C.C.P. Applicant was convicted of the offense of capital murder and punishment was assessed at death. V.T.C.A. Penal Code, § 19.03. This Court affirmed applicant's conviction on direct appeal. *Banks v. State*, 643 S.W.2d 129 (Tex.Cr.App.1983), *cert. denied*, 464 U.S. 904, 104 S.Ct. 259, 78 L.Ed.2d 244 (1983). Applicant was granted a stay of execution on January 3, 1984, pending habeas corpus pursuant to Art. 11.07, supra. On February 29, 1984, this Court vacated the stay and denied the application for post-conviction relief. Applicant filed a second application for writ of habeas corpus that the trial court recommended be denied. We denied relief. Ex parte Banks, No. 69,032, delivered September 26, 1984. We granted applicant's motion for rehearing on this second application for habeas corpus on October 1, 1986.

First, we will withdraw the opinion issued on September 26, 1984, wherein applicant's first application for writ of habeas corpus was denied. Next, we will deny without a written opinion all grounds raised in the application for writ of habeas corpus except those concerning the alleged improper excusal of three prospective jurors, Dillon, Ervin and McAfee.

With regard to prospective jurors Dillon and Ervin, applicant contends that they were improperly excused under *Adams v. Texas*, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed. 2d 581 (1980) and *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). We have reviewed the testimony presented during the voir dire of these two jurors and find that they were properly excused. We therefore overrule applicant's contentions without further discussion.

With regard to the third prospective juror, McAfee, applicant contends that the trial court erred by permitting McAfee to be excused for cause because of bias under Art. 35.16, V.A.C.C.P. Although applicant's attorney objected to the grant of the State's challenge for cause at trial, applicant did not contest the exclusion on direct appeal. Thus, before we may consider the propriety of the trial court's actions, we must decide whether this issue may be raised *for the first time* by application for a writ of habeas corpus.

Traditionally, habeas corpus is available only to review jurisdictional defects, *Ex parte Watson*, 601 S.W.2d 350 (Tex.Cr. App.1980), or denials of fundamental or constitutional rights. *Ex parte Clark*, 597 S.W.2d 760 (Tex.Cr.App.1979). See also *Ex parte Russell*, 738 S.W.2d 644 (Tex.Cr.App. 1987). The Great Writ should not be used to litigate matters which should have been raised on appeal.

The improper exclusion of a prospective juror on statutory grounds, as alleged in the instant case, does not involve jurisdictional defects nor are fundamental constitutional considerations invoked. As such, we will not consider such a claim for the first time in an application for writ of habeas corpus.

We must pause to distinguish this Court's opinion in *Ex parte Bravo*, 702 S.W.2d 189 (Tex.Cr.App.1982). In that case, we ruled on original submission that "error rising to the level of constitutional error may be raised for the first time in a post-conviction application for writ of habeas corpus even though not raised in the direct appeal." *Id.* at 190. In our opinion issued on the State's motion for rehearing, we stated, *id.* at 193:

"Exclusion of venirepersons in violation of *Adams* and *Witherspoon* violates the Sixth and Fourteenth Amendments to the

United States Constitution, and a death sentence so imposed cannot be carried out."

Thus, in *Bravo,* supra, the exclusion of the prospective jurors was in violation of the constitution since it did not meet the requirements of *Adams,* supra, or *Witherspoon,* supra. Because this error was of constitutional magnitude, we considered it on application for writ of habeas corpus even though the error was not raised on direct appeal.

In the case before us, applicant contends that prospective juror McAfee was excluded in violation of a procedural statute; no constitutional issues are raised. Thus, the holding in *Bravo,* supra, does not apply to the instant case.

The relief sought is denied.

CLINTON, Judge, dissenting.

Article I, § 12 of the Bill of Rights provides:

"The writ of habeas corpus is a writ of right, and shall never be suspended. The Legislature shall enact laws to render the remedy speedy and effectual."

When any person is restrained in his liberty, the writ of habeas corpus is the remedy to be used. Article 11.01, V.A.C.C. P. To make it speedy and effectual the Legislature has enacted, *inter alia,* the several provisions of Chapter Eleven, Code of Criminal Procedure.

Generally, once preliminary procedures have been accomplished and the matter is ripe for decision, the habeas judge or court shall determine whether *"legal cause* be shown for the imprisonment or restraint," and if none, to discharge the applicant. Article 11.40. See *Ex parte Coupland,* 28 Tex. 387, at 390, 391 (1862). Chapter Elev-

en "applies to all cases of habeas corpus for the enlargement of persons *illegally* held in custody or in any manner restrained in their personal liberty[.]" Article 11.64.[1]

Pursuant to Article 11.07, V.A.C.C.P., after final conviction in felony cases the writ will lie to challenge "legality of the applicant's confinement," resulting in a judgment of this Court either "remanding the petitioner [sic] to custody or ordering his release, as the law and facts may justify." *Id.,* § 2(c) and (d), and § 3.

Today, without citing any precedent, the majority would have the Court pronounce: "The Great Writ should not be used to litigate matters which should have been raised on appeal." Slip opinion, at 2.[2] While admonitory in tone, that sounds like a restatement of a variously phrased common law axiom that a writ of habeas corpus cannot serve the office or purpose of, nor be a substitute for, an appeal. See generally 38 Tex.Jur.3d *Extraordinary Writs* § 34. As may be true of maxims perpetuated by rote, however, heedless repetition has obscured its intendment.

So far as discovered, a similar version first appeared in *Ex parte Roya,* 85 Tex. Cr.R. 626, 215 S.W. 322 (1919); albeit having decided the contention presented by applicant was "without merit," *id.,* 215 S.W. at 322–323, Judge Lattimore, for himself and Judge Morrow, wound up with a sort of policy statement, *viz:*

"Notwithstanding our statutes plainly provide how a case may be brought directly to this court by appeal so that all questions may be fully presented, appellant attempts to bring the case here by habeas corpus, presenting no question that might not have been brought up regularly on appeal.

---

1. The formulations are reminiscent of a royal pledge confirmed in the Great Charter of King John, the Magna Charta, *viz:*

  39. No freeman shall be *taken or imprisoned,* or disseised, or outlawed, or banished, or any ways destroyed, nor will we pass upon him, nor will we send upon him, *unless by lawful judgment of his peers, or by the law of the land."*

3 Vernon's Texas Constitution (1955) 675, at 680. (All emphasis throughout this opinion is mine unless otherwise indicated.)

2. On original submission a majority had proclaimed that "failure to raise the issue as a ground of error in the appeal precludes assertion of the matter by post-conviction habeas corpus, absent a showing of a change in the law or some other ground that would justify a belated assertion of the matter."

We do not think this court should encourage or permit collateral attacks by habeas corpus on judgments in cases where the matters complained of should properly be brought here by appeal. *Ex parte McKay*, [82 Tex.Cr.R. 211,] 190 S.W. 637 [1917], and authorities cited; *Ex parte White*, 50 Tex.Cr.R. 473, 98 S.W. 850 [1906]."

*Id.*, 215 S.W. at 323. Dissenting Presiding Judge Davidson pointed out the cause "brings in review the validity and constitutionality of the Zone Law...." *Ibid.* Let us examine those two cases and authorities cited.

Typically an applicant, convicted and ordered confined by judgment of a trial court, sued out a writ of habeas corpus claiming entitlement to release from custody or discharge from consequences of judgment. Upon denial of relief by a lower court an applicant usually appealed from that order, rather than file original application for habeas corpus in this Court.[3]

Focusing on the latter because more in point than *Ex parte McKay* (seeking discharge from pretrial custody pursuant to capias after indictment, *id.*, 190 S.W. at 638), we find in *Ex parte White*, supra, essential facts are that applicant was fourteen years old at time of trial (though that fact was not then shown); that upon arraignment for felony theft applicant expressed his desire to plead guilty; that the trial court properly admonished him and then instructed the jury to assess punishment; that applicant was sentenced to two years imprisonment and that while in the penitentiary he filed a writ of habeas corpus before the district judge, alleging lack of any proof to the jury, denial of two days to prepare for trial and, after sentence being pronounced, two days to make a motion for new trial and, finally, the court adjourned the day of sentencing thus denying his right to appeal. Upon hearing the writ the judge of the convicting court denied relief and remanded applicant to penitentiary authorities. *Id.*, 98 S.W. at 851.

On appeal, as Judge Brooks saw the matter for the Court, applicant was "seeking relief by habeas corpus for *irregularities* in the trial that could have been availed of by appeal." *Ibid.* Given that posture of the matter, he analyzed the law governing the situation, *viz:*

"... The writ of habeas corpus is not available as a means of effecting the purposes of an appeal. *Perry v. State*, 41 Tex. 488; *Ex parte Scwartz*, 2 Tex. App. 74; *Ex parte Oliver*, 3 Tex.App. 345; *Ex parte Dickerson*, 30 Tex.App. 448, 17 S.W. 1076. *The matters complained of by appellant would have merely rendered the judgment voidable, and not void*, if the complaint had been made on appeal. This being true, *the writ of habeas corpus cannot be used as a right of appeal.* *Ex parte Boland*, 11 Tex.App. 159; *Ex parte Crawford*, 36 Tex.Cr.R. 180, 36 S.W. 92."

*Ibid.*[4] Accordingly, the judgment was affirmed.

In the cases cited in *Ex parte White, id.*, 98 S.W. at 851, and in *Ex parte McKay, id.*, 190 S.W. at 639, 640, the Court drew from opinions of the Supreme Court of Texas when it exercised jurisdiction in criminal law matters and also from learned treatises. As *Ex parte White* teaches, the true lesson in cases similarly situated is that after conviction only claims of a certain character are cognizable by a habeas court—not that an applicant forfeits his right to present his claims because he also could appeal but did not or, if he did, failed to raise them.

---

**3.** An explanation for cases coming to the Court on appeal from a judgment below on habeas corpus is in *Ex parte Lambert*, 37 Tex.Cr.R. 435, 36 S.W. 81 (1896). Noting there are certain matters over which "district judges are authorized to entertain jurisdiction and grant the writ of habeas corpus," and that the Court had like jurisdiction but was also authorized "to review such cases on appeal," therefore, "we now lay down the rule that, except in extraordinary cases, we will not entertain jurisdiction as a court to grant original writs of habeas corpus." *Id.*, 36 S.W. at 82.

**4.** The Court went on to hold the question of applicant's age should have been raised during trial, and because it was not he could not successfully invoke the writ of habeas corpus. *Ibid.*

Illustrative is *Ex parte Scwartz*, 2 Tex. App. 74 (Ct.App.1877), in which the Court applied common law rules to resolve an appeal from a judgment of a county court dismissing his application for habeas corpus. Procedurally the matter is somewhat complicated; germane developments are summarized below in the margin.[5] As the Court viewed it, "the sole object of the petition for *habeas corpus* is to make the writ answer the purposes of an appeal from the mayor's court to the county court, and to revise the action of the county court in dismissing his appeal, and to afford redress against the action of the county judge in refusing to award a writ of *certiorari* sought for the purpose of affording relief against the action of the mayor in the case." *Id.*, at 79. Upon reviewing and applying the authorities, the Court affirmed, *viz:*

" 'A proceeding defective for irregularity and one void for illegality may be revised upon error or *certiorari;* but it is the latter defect only which gives authority to discharge on *habeas corpus.*' An irregularity is defined to be a want of adherence to some prescribed rule or mode of proceeding, and it consists either in omitting to do something that is necessary for the due and orderly conducting of a suit, or doing it in an unreasonable time or improper manner. Hurd on Habeas Corpus, 333, citing Tidd's Pr. 434, and 3 Chitty's Genl.Pr. 509.

Illegality is properly predicable of radical defects only, and signifies that which is contrary to the *principles* of law as distinguished from mere *rules* of proce-

dure. It denotes a complete defect in the proceedings. Hurd, 333; Tidd's Pr. 435.

\* \* \* \* \* \*

'The writ of *habeas corpus* was not designed to operate as a writ of error or *certiorari*, and does not have their force and effect. It does not deal with errors or irregularities which render proceedings voidable merely, but such only as render them absolutely void.' *Perry v. The State*, 41 Texas, 490."

*Id.*, at 80–81 (emphasis in original). Further, the Court noted the holding in *Darrah v. Westerlake, Chief of Police*, 44 Tex. 388 (1876).[6] In applying it, the Court said:

"... [T]he county judge could only have inquired whether in this case the mayor ... has power to hear and determine a charge of assault and battery. \* \* \* \* Nor could he, we believe, have revised the action of the county court in dismissing his appeal, or in refusing a *certiorari*, on the ground set out in the petition for that writ, as embodied in the record before us."

*Id.*, at 81. Accordingly, the Court concluded, "We are unable to see, from anything in the record before us, that the relator has been illegally restrained of his liberty, or that the county judge erred in causing him to be remanded to the custody of the marshal until the fine and costs are paid." Thus the judgment was affirmed. *Id.*, at 82.

Contemporaneously, the Court decided *Ex parte Slaren*, 3 Tex.App. 662 (Ct.App 1878). Convicted by recorder for violation

---

**5.** After conviction in mayor's court for assault and battery, applicant attempted to perfect an appeal to county court but, on motion of county attorney to dismiss for want of a sufficient appeal bond, the court dismissed his purported appeal and issued a writ *procedendo* to mayor's court to execute judgment; apparently applicant then filed a petition for certiorari to remove the original case from mayor's court to county court but it was not entertained; committed to jail for want of payment of fine and costs, applicant sought habeas corpus relief in county court, and on hearing the writ the county judge dismissed the case and remanded applicant to custody of the city marshal. Appeal to the Court followed. *Id.*, at 75–79.

**6.** After a recorder found him guilty of violating a municipal fire ordinance, applicant undertook to challenge validity of his conviction by habeas corpus in criminal district court; because the court refused to take testimony tending to disprove facts found by recorder and remanded him to custody, he appealed. The Supreme Court held:

"So long as the judgment of the recorder remained in force it was not competent for appellant to enter into an investigation of the facts upon which the recorder entered his judgment. This could only be done by an appellate court.

The writ of *habeas corpus* cannot be made use of to effect an appeal or writ or error." *Id.*, at 389.

of city ordinance requiring a license to operate a public hack, and committed to jail for failure to pay fine and costs, applicant did *not* take an appeal, but instead sued of writ of habeas corpus in an original proceeding in the Court of Appeals. Therein he asserted the ordinance was unconstitutional; the Court agreed and ordered him discharged from confinement, *viz:*

> "It is conceded that the writ of *habeas corpus* cannot be invoked for the purpose of correcting errors, or to subserve the purpose of an appeal or writ of error. Hurd on Hab. Corp. 333; *Perry v. The State,* 41 Texas, 490; *Ex parte Scwartz,* 2 Texas Ct.App. 74, and authorities cited. The rule is otherwise when the proceedings sought to be inquired into are radical in their character, illegal, and void. [Quoting *Hurd, ante:* Illegality is properly predicable of radical defects et cetera (as in *Ex parte Scwartz,* supra)].
>
> [On holding in *Ex parte Gregory,* 1 Texas Ct.App. 753] the proceedings under which the applicant is held are without authority of law and void [and applicant is discharged from confinement]."

*Id.,* at 667–668.

All other decisions cited in *Ex parte White* and *Ex parte McKay* are of like vein. See, e.g., *Ex parte Dickerson,* 30 Tex.App. 448, 17 S.W. 1076 (1891), and authorities collated therein. None *holds* that every collateral attack against a judgment of conviction is prohibited by law because the challenge "should properly be brought here by appeal," *Ex parte Roya,* supra.[7] Almost uniformly the threshold question went to integrity of the judgment, *viz:* Whether the claim is that the judgment is void for illegality or voidable for irregularity. Examination of the pleadings usually

sufficed to provide an answer, and more likely than not also practically determined the ultimate conclusion.

Indeed, a close reading of his majority opinion in *Roya* reveals the setting in which Judge Lattimore would have the Court implement his notion. At the threshold he takes pains to point out:

> "... No attack is made in the application on the constitutionality of the law under which applicant was convicted. Nor on any alleged error in procedure making the judgment of conviction void."

*Id.,* 215 S.W. at 322. Instead, applicant contended that the indictment did not charge an offense under the law, his theory being the underlying statute had been impliedly repealed and superseded. Only after the majority found his contention without merit did Judge Lattimore venture to suggest his policy of abstention.

Later on, however, sometimes the question was never asked in the first place because the Court thought it enough to say axiomatically, "A writ of habeas corpus cannot serve the office of an appeal." An example is *Ex parte Beland,* 94 Tex.Cr.R. 614, 252 S.W. 529, at 530 (1923).[8] And there is a host of similar decisions rendered prior to 1943, as indicated in digests and annotations to pertinent constitutional and statutory provisions. However, most arose on application for the writ to test validity of initial custody or restraint pursuant to a complaint purporting to charge an offense, whether a misdemeanor, e.g., *Ex parte Drenner,* 125 Tex.Cr.R. 331, 67 S.W.2d 870 (1934), or a felony "in advance of return of an indictment and trial thereon," *Ex parte Overstreet,* 129 Tex.Cr.R. 574, 89 S.W.2d 1002, at 1003 (1936), or "after indictment to

---

**7.** As indicated *ante* at 540–541, Judge Lattimore seems to have originated the notion, and the cases show that he continued to advance it as a matter of policy, e.g., *Ex parte Garcia,* 90 Tex. Cr.R. 287, 234 S.W. 892, 893 (1921); *Ex parte Matthews,* 96 Tex.Cr.R. 497, 258 S.W. 477 (1924).

**8.** Committed to the penitentiary, applicant contended the trial court "was without power to revoke the suspended sentence" in that its action came after term of sentence had expired. The Court found, "The question presented is one

of much interest, and we regret that under the settled holdings of this court [that habeas may not serve as an appeal] it cannot be *considered."* *Id.,* 252 S.W. at 530. The theory was after revocation and pronouncement of sentence his right of appeal accrued and "this was the legal, adequate and statutory remedy;" citations are former article 856, C.C.P. (1911), now Article 42.04, V.A.C.C.P., "Sentence when appeal is taken," and three cases relating to taking an appeal *vis a vis* a suspended sentence, e.g., *Ex parte Lawson,* 76 Tex.Cr.R. 419, 175 S.W. 698 (1915).

prevent a trial on the merits," *Ex parte Meers*, 129 Tex.Cr.R. 465, 88 S.W.2d 100 (1935)—situations requiring "a full development of the facts," and thus "entirely different in principle from *Ex parte Roquemore*, 60 Tex.Cr.R. 282, 131 S.W. 1101, 32 L.R.A.(N.S.) 1186 [1910]," *Ex parte Meers*, supra, 88 S.W.2d at 101.[9]

During that period, of course, Chapter Eleven did not contain specific procedures designed solely for handling postconviction writs of habeas corpus. See Historical Note to Article 11.07. Acts 1943, 48th Leg. Ch. 233, p. 354, proposed to fill the void in felony cases by authorizing any district judge presented with an application to set the same for hearing, to ascertain the facts and to order issuance of the writ returnable to this Court along with the record made, and as well by a supplementary proceeding whereby this Court might have the facts determined, to the end that this Court then hear the matter and "enter its judgment remanding the petitioner to custody or ordering his release, *as the law and facts may justify*." That procedure was to be "exclusive" in discharging the prisoner. Its justification is stated in § 2, *viz:*

"[P]resent statutes governing the writ of habeas corpus are inadequate to fully cover cases arising after final conviction, and [a] necessity exist[s] for prompt and adequate relief for *deserving* petitioners as well as the rights of the state in such cases[.]"

Except "as the law and facts may justify," the Legislature failed to identify "deserving" prisoners. However, at first opportunity, *Ex parte Ricketts*, 148 Tex.Cr.R. 569, 189 S.W.2d 872 (1945), the Court firmly preserved the *status quo ante*.[10]

Thus common law rules prescribing issues cognizable on post-conviction habeas corpus prevailed, and those limitations remained in force—that is, until advent of The Substantial Federal Question. See, e.g., *Ex parte McCune*, 156 Tex.Cr.R. 213, 246 S.W.2d 171 (Tex.Cr.App.1952).[11] In the

9. In *Roquemore,* supra, applicant had already been convicted in an inferior court and, though giving notice of appeal, "omitted or failed to perfect his appeal," *id.,* 131 S.W. at 1102; he claimed the conviction was obtained under a statute that did not proscribe his alleged conduct. Upon reviewing the statute the Court agreed, so "manifestly no offense is charged, and none could be charged upon any state of case made by this record," *ibid;* therefore, the Court ordered applicant discharged, *id.,* at 1105. That is to say, the conviction was vulnerable to collateral attack on habeas corpus because void for illegality—notwithstanding want of appeal.

Compare *Ex parte Minor,* 146 Tex.Cr.R. 159, 172 S.W.2d 347 (1943) (on habeas in lieu of appeal Court will not inquire into "sufficiency of an indictment of information *where it is based on valid law* under which an offense could be charged," contrasting, e.g., *Roquemore,* supra. *Id.,* 131 S.W. at 347–348).

10. The Court understood applicant to take the position that under amended article 119, "he has the legal right to impeach and set aside an apparently valid judgment of a court of competent jurisdiction, and that he may substitute the writ of habeas corpus for the remedy accorded him by an appeal from such judgment;" pointedly it noted the circumstance that the trial court had "jurisdiction of the person, of the subject matter, as well as the power to render the judgment, *is not even questioned.*" Alluding to the maxim that "a writ of habeas corpus cannot be substituted for the remedy of an appeal," the Court thought that "unless said article accords to the relator such right, it does not exist," but found "nothing in the statute mentioned which ... enlarged his legal right[.]" Because it was obvious that the proceeding applicant initiated was a collateral attack on what appears to be a valid judgment of a court of competent jurisdiction, "[t]his he cannot do any more than he can resort to the writ of habeas corpus as a substitute for the right of an appeal." *Id.,* 189 S.W.2d at 873.

Then, to demonstrate the latter proposition the Court quoted from *Ex parte Dickerson,* supra, to the same effect as the decisions cited and discussed *ante,* at 542–544, thereby making clear that applicant was raising mere irregularities rather than established illegalities.

11. Having been convicted of capital murder with the death penalty assessed, and the judgment having been affirmed on direct appeal (The Court carefully noting, "The judgment of the court has not been carried out."), applicant applied to the convicting court for a writ of habeas corpus pursuant to former article 119. After restating the jurisdiction of the Court was primarily appellate, its only original jurisdiction being to entertain applications for habeas corpus, and further that here "the use of the writ of habeas corpus amounts to a substitute for an appeal, which we have repeatedly held to be unavailing," the Court pointed out a procedural vacuum in our state law, *viz:*

"In this connection, it should be remembered that we do not have a statute in this state similar to those in other states ...,

latter part of its opinion the Court took up the issue of due process, *viz:*

"There is no question but that this court not only has the power but it is its duty to prevent enforcement of a judgment in a criminal case obtained under circumstances and conditions which constitute a denial of due process of law. We know, also, that *if the state provides no remedy whereby a state prisoner may seek redress from imprisonment claimed to be in violation of federal constitutional rights,* the federal courts will act to protect such federal rights. [citations omitted].... [T]he Supreme Court of the United States defines denial of due process in a criminal trial as 'the failure to observe that fundamental fairness essential to the very concept of justice.'"

*Id.,* 246 S.W.2d at 172–173. Accord: *Ex parte Puckett,* 165 Tex.Cr.R. 605, 310 S.W. 2d 117 (1958):

"[Because a prior federal conviction] was not available to enhance the punishment ... and [thus] the allegations of the indictment are insufficient to sustain a life sentence[,] this Court [will exercise its] power and authority to prevent the enforcement of a judgment obtained under circumstances which constitute a denial of due process."

*Id.,* 310 S.W.2d at 118.

In *Ex parte Bush,* 166 Tex.Cr.R. 259, 313 S.W.2d 287 (1958), a presumptively insane defendant was convicted as an habitual offender without benefit of counsel; upon his application for writ of habeas corpus so claiming, the Court ordered a hearing in the convicting court to develop the facts. That done, from the record the Court concluded applicant had sustained his allegations and established a deprivation of due process. Confirming its power and authority to prevent enforcement of a judgment thus obtained, the Court reasoned:

"While the proceeding here is new to this Court, it is now clear that where after conviction, *regular on its face and on the record,* it is made to appear that

whereby a remedy is provided to meet the situation which relator here seeks to invoke."

the defendant was denied due process of law at the trial, and this Court refuses to issue the writ of habeas corpus applied for, the Supreme Court of the United States will reverse and remand the cause to this Court for further proceedings not inconsistent with the opinion of that Court"

*Id.,* 313 S.W.2d at 288. But cf. dissenting opinion of Judge Davidson, at 289: "We have so often said that the writ of habeas corpus can not be used as a substitute for an appeal that it should now be axiomatic." See also Note, *Habeas Corpus—Judgments—Deprivation of Due Process in State Conviction Is Grounds for State Habeas Corpus Proceeding,* 37 Texas L.Rev. 496 (Apr.1959).

However constructive the legislative intentions in 1943, and diligent the efforts of the Court to implement and effectuate them when federal constitutional rights were implicated, lest its refusal be reversed by the Supreme Court and remanded for further proceedings, *Ex parte Bush,* supra, 313 S.W.2d at 288 (Tex.Cr.App.1958), and *Ex parte McCune,* supra, at 246 S.W.2d 172–173 (1952), they failed to meet needs of increased federal habeas corpus litigation and concomitant demands of the Supreme Court on petitioners and state courts, respectively, in such cases as *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), and *Townsend v. Sain,* 372 U.S. 293, at 313–319, 83 S.Ct. 745, at 757–759, 9 L.Ed.2d 770 (1963). Therefore, in Acts 1967, 60th Leg., Ch. 659, p. 1732, § 7, at 1734–1735 (Act), the Legislature reworked and expanded procedural requisites to produce revised Article 11.07, V.A.C.C.P.

Unlike its earlier 1943 effort in behalf of "deserving petitioners," the Legislature provided standards for obtaining relief, *viz:* pleadings that "would render petitioner's *confinement* under the felony conviction *illegal;*" proof going to issues material to "whether the petitioner is *illegally restrained,*" Acts 1967, *ante,* at 1734–1735.

In *Ex parte Young,* 418 S.W.2d 824 (Tex. Cr.App.1967), the Court construed amended

*Id.,* 246 S.W.2d at 172.

Article 11.07 in light of several developments, including "[n]ew concepts of the meaning of due process announced by the Supreme Court of the United States," recognizing, "A judgment of conviction obtained in violation of due process of law is *void for want of jurisdiction of the court to enter such judgment,*" and that Article 11.07 provides *"an effective, adequate and speedy post conviction remedy* in that it offers the applicant the opportunity for a full and fair state court fact-finding hearing of the sort dictated by the Supreme Court in *Townsend v. Sain,* [supra]." 418 S.W.2d, at 826. It set out the 1967 Act, clearly indicating all changes made by the Legislature, and suggested examples of due process violations warranting relief. *Id.,* at 827–829.

The Court concluded, *inter alia,* that its construction of the Act did indeed support holdings that the statute provides "an effective, adequate and speedy post conviction remedy," met the "need of Federal Courts for fact-findings as well as a record from which they may determine whether a hearing in Federal Court is required" and produces "fact-findings which the Court of Criminal Appeals or the Federal Courts may adopt." Further, its construction was found to be consistent with new concepts of due process and rules of *Townsend v. Sain,* supra, concerning when a federal habeas court "must grant a hearing, including the exhaustion of state remedies (*Fay v. Noia,* supra)." *Id.,* at 830.

In sum, in 1967 the Legislature devised and the Court sanctioned by construction a system to render the remedy via habeas corpus "speedy and effectual," consonant with the admonition and mandate of Article I, § 12, of our Bill of Rights. Thus the constitutional provisions guarantee availability of the Great Writ pursuant to legislative enactments designed to enable an applicant to make a collateral attack and to obtain relief against a final judgment of conviction rendered void not only for reasons under the common law but also for

want of jurisdiction of the convicting court to enter it where conviction was had in violation of due process. Taken literally, they prohibit judicially imposed barriers at the threshold of access to the courts by a convicted felon seeking this "writ of right." [12]

Recited by rote as a litany, the axiom that a writ of habeas corpus cannot substitute for an appeal becomes such a barrier. However, as it was explicated by Mr. Hurd and other scholars and understood by our appellate courts, see *ante,* at 542–544, there is no barrier.

Habeas corpus is reserved for consideration of certain asserted errors that are extremely radical in character, *viz:* "illegalities" contrary to basic principles of law, including those of constitutional dimension, rendering a proceeding void. Of course, they may also be presented on appeal. However, lesser claimed errors—"irregularities" implicating no more than mere rules of procedure—are not cognizable on habeas corpus and, therefore, may be redressed *only* on appeal. The latter and other minor defects must be addressed on appeal or perhaps in some other available forum, such as an administrative agency or one that possesses clemency powers.

Thus what the axiom actually means is the fact that those certain claimed illegalities have not been raised on appeal will not preclude an applicant from seeking and a habeas court from granting relief from illegal postconviction confinement, custody or restraint. Compare *Ex parte Clark,* 597 S.W.2d 760 (Tex.Cr.App.1979), with *Ex parte Coleman,* 599 S.W.2d 305 (Tex.Cr. App.1979), both dealing with error in charge to jury.

In the instant cause the majority says error in excluding a prospective juror "on statutory grounds" may not be considered "for the first time in an application for writ of habeas corpus," in that the contention is the excusal was "in violation of a procedur-

---

**12.** The "open courts" mandate of Article I, § 13 and the "due course" requirements of § 19 seem to forbid courts from closing their doors to persons seeking relief from "injury" done to person and from deprivation of liberty. See Interpretive Commentary following § 13 and 19.

al statute," which the majority identifies globally as Article 35.16, V.A.C.C.P. Slip opinion, at 540–541.[13] In fact, applicant's third ground for relief is that McAfee was excluded by the trial court without any legal ground "in violation of [his] right to due process and equal protection of law, provided him by the United States and Texas Constitutions." Brief, at 7.

An erroneous exclusion, as this one appears to be, purportedly based on a state statute may still raise a constitutional due process question. See, e.g., *Ex parte Williams*, 748 S.W.2d 461, at 464 (Tex.Cr. App.1988), and *Ex parte Hughes*, 728 S.W. 2d 372, at 375 (Tex.Cr.App.1987), each of which involved exclusions under a "procedural statute," as indeed did *Ex parte Bravo*, 702 S.W.2d 189 (Tex.Cr.App.1982), "distinguished" herein by the majority.

While the Court ultimately might reject it, because the majority refuses for the wrong reason to examine the constitutional claim made by applicant, I respectfully dissent.

TEAGUE, Judge, dissenting.

"The writ of habeas corpus is a writ of right, and shall never be suspended." Art. 1, § 12, Texas Constitution.

"[The Great Writ] is the most celebrated writ in English Law." Blackstone, *The Commentaries on the Laws of England* (1762 and 1769 editions).

The Great Writ was proclaimed by the Colonists as among the immemorial rights descended to them from their ancestors. *Ex parte Yerger*, 8 Wall. 85, 75 U.S. 85, 95–98, 19 L.Ed. 332, 336 (1869).

In 1963, the Great Writ was proclaimed by a moderate Supreme Court as "one of the precious heritages of Anglo–American civilization." *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

"What is remarkable about the [Great] [W]rit is its constancy." Liebman, *Federal Habeas Corpus Practice and Procedure* (The Michie Company, 1988 edition), Vol. 1, § 2.2, at page 6.

"[The Great Writ] for centuries has served the same essential function, at essentially the same intergovernmental and intercourt junctions in the Anglo–American system of criminal justice, of judicially ferrying persons whom the government, through restraints, has separated from their rights under the fundamental Law of the Land to the safe harbor afforded by that Law. It simply is not accurate, then, to say that the same ferry boat, traversing the same constitutional crossing, somehow used not to be a ferry boat—because the amount of its cargo and frequency of its trips have increased over time." Liebman, *Id.*, at page 12.

This is an Art. 11.07, V.A.C.C.P., postconviction writ of habeas corpus proceeding, in which Delma Banks, Jr., henceforth applicant, through counsel, Hon. Clifton "Scrappy" Holmes, gives five reasons why his conviction for capital murder and sentence of death should be set aside by this Court.

On original submission, in denying applicant any relief, this Court addressed only two of the five contentions that were presented on behalf of applicant. However, when this Court ordered this cause filed and set for submission, this Court stated the following: "We order such postconviction application filed and set for submission before the Court En Banc without oral argument." Thus, all of the issues applicant presents in his application, and as argued in his brief, and not just two of those issues, were subject to review by this

---

**13.** In making his challenge the prosecutor based it on his statement "that if any juror has any consciencious [sic] scruples or any bias or prejudice against any phase of the law," elaborating, "Mr. McAfee knowing both individuals involved in this as he did, and having stating [sic] that that oath [to jury under Article 35.22] just couldn't remove that from him, [he] is subject to challenge for cause and we would submit on that basis." [S.F. 1374, 1375–1376]. The trial judge then inquired into McAfee's "hav[ing] more knowledge about this defendant than perhaps any other member of this jury, ... than someone else that did not know him; upon receiving an affirmative answer the judge declared, "In that event, I'm going to excuse Mr. McAfee for cause[.]" [S.F. 1376–1377]. The record reflects that, like applicant, McAfee is black. [S.F. 1377].

Court. For reasons not explicated in the original opinion, this Court chose not to review all of the issues that were presented on behalf of applicant.

On original submission, a majority of this Court held that because applicant did not object at trial to the trial judge's excusing venirepersons Dillon and Ervin, he, the applicant, was precluded from complaining about their excusal by way of the Great Writ, as applied to postconviction proceedings.

Now on rehearing this Court again expressly fails to review all of applicant's contentions, in particular his claim that the trial judge erred in excusing venireperson L.C. Mc Afee, Sr., pursuant to the State's challenge for cause, and over applicant's trial counsel's objection; his claim that because his court appointed attorney on appeal did not raise the Mc Afee issue on direct appeal he did not receive the effective assistance of counsel on direct appeal; and, lastly, his claim that the evidence was insufficient to support the jury's affirmative finding to special issue number two, see Art. 37.071, V.A.C.C.P. I have no quarrel with the disposition that the majority opinion makes as to venirepersons Dillon and Ervin. However, to fully appreciate applicant's contention that the trial judge erred in excusing venireperson Mc Afee over objection and pursuant to the State's challenge for cause, it is necessary to review that claim in tandem with his claim that he did not receive the effective assistance of counsel on direct appeal because the Mc Afee issue was not presented on direct appeal. Thus, if appellate counsel was ineffective because he did not present the Mc Afee issue on direct appeal, applicant has sufficiently explained why the issue was not presented on direct appeal.

The majority opinion on rehearing refuses to review the Mc Afee issue for two reasons. One reason is that applicant did not raise the issue on direct appeal; thus he cannot now assert this claim by way of postconviction habeas corpus. The problem with this reason is that applicant's claim about the excusal of Mc Afee is tied in with his claim that he was denied the

effective assistance of counsel on direct appeal for the very reason the majority opinion gives to "pour" him out. Another reason the majority opinion gives to "pour" applicant out is that an alleged violation of a statute, such as Art. 35.16, V.A.C.C.P., is not within the scope of the Great Writ, as applied to postconviction habeas corpus proceedings.

The majority opinion also, but expressly, tells us that henceforth it is only where an applicant asserts in an application for postconviction relief a denial of fundamental or constitutional rights, or asserts therein that his conviction is void because of a lack of jurisdiction by the trial court, that he may then invoke the powers of the Great Writ, as applied to postconviction proceedings.

Contrary to the majority opinion, I find that the issue that applicant presents that concerns venireperson Mc Afee should be reviewed by this Court, but must be done in conjunction with his claim that he did not receive the effective assistance of counsel on direct appeal. Of course, the majority opinion should also review applicant's contention that the evidence is insufficient to sustain the jury's affirmative finding to special issue number two. See *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Therefore, I file this dissenting opinion. However, I limit my remarks to the refusal of this Court to consider applicant's complaint about the trial judge excusing Mc Afee in conjunction with his claim that he was denied the effective assistance of counsel on direct appeal.

What really troubles and disturbs me about the majority opinion is some of the loose language that is found therein that is used to reject applicant's contention regarding the Mc Afee issue. However, what the majority opinion holds, regarding what now may be raised via postconviction habeas corpus, pursuant to Article 11.07, supra, comports with "the movement" that presently exists in some quarters of this Nation-to restrict or limit the scope of postconviction habeas proceedings.

History teaches us that on June 15, 1215, King John of England met at Runnymeade

with his Archbishops, Bishops, Abbots, Earls, Barons, Justiciaries, Foresters, Sheriffs, Governors, Officers, Bailiffs, and other trusted and faithful servants, and entered into the Magna Charta. Although the origin of the Great Writ has not yet been firmly established, most historians believe that it comes to us through the principles set out in the Magna Charta. In recent times, the scope of the writ was expanded to cover virtually any situation in which the habeas corpus court believed that the defendant had been wrongfully convicted. See 2 *Criminal Defense Techniques* (1986 edition), § 44.02[2]. Thus, the Great Writ became adaptable to time changes, and also became capable of wider application than the mischief which gave its birth. E.g., *Weems v. United States*, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1909). In sum, the Great Writ has undergone a metamorphosis and has become the subject of judicial innovativeness and creativeness, *Glover v. North Carolina*, 301 F.Supp. 364, 366 (E.D.N.C.1969). Even the Supreme Court of the United States once declared that, for purposes of federal habeas corpus law, any "restraint contrary to fundamental law, by whatever authority imposed, could be redressed by the writ of habeas corpus." *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). Also see *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). In *Ex parte Young*, 418 S.W.2d 824 (Tex.Cr.App. 1967), even this Court went so far as to hold that any judgment of conviction obtained in violation of due process of law, and implicitly due course of law under the Texas Constitution, was subject to being set aside under Art. 11.07, supra.

Today, however, there is a great movement in this Nation to restrict or limit the scope of the Great Writ, as applied to postconviction habeas corpus proceedings and as most of us have come to know it. The movement to return us to a foreign time when the Great Writ, as applied to postconviction proceedings, had little meaning, see, for example, *Ex parte Banspach*, 130 Tex. Cr.R. 3, 91 S.W.2d 365 (1936), and *Ex parte Minor*, 146 Tex.Cr.R. 159, 172 S.W.2d 347 (1943), actually comes to us through decisions by "the Burger Court" and "the Rehnquist Court", which appear to have had as their goal, for purposes of federal criminal law, a strong desire to return us to at least the eighteenth century, if not beyond. However, in addition to the now "Rehnquist Court", others who advocate cutting back on the scope of the Great Writ, as applied to postconviction proceedings, are members of the law and order community; members of the law enforcement community; and those individuals in our society who advocate the crime control model of criminal justice. I find that all of these groups, as far as the Great Writ goes, when applied to postconviction habeas corpus proceedings, have one goal or objective in mind: to curtail as much as possible the scope of the Great Writ, as applied to postconviction habeas corpus proceedings, and perhaps even to eventually eliminate the Great Writ from our criminal law. This kind of thinking is not new, however. During the Civil War, efforts were made to suspend the Great Writ. See *Ex parte Milligan*, 71 U.S. 2, 4 Wall. 2, 18 L.Ed. 281 (1866). Interestingly, there is no provision in the Federal Bill of Rights that pertains to the Great Writ.

The movement to dispense with postconviction remedies probably originated in the early 1970's, soon after Hon. Warren Burger became Chief Justice of the Supreme Court of the United States. Since Burger was Chief Justice, the movement has undoubtedly been influenced by the "Rehnquist Court's hostility to the rights of criminal defendants generally and to postconviction remedies and relief specifically." Wilkes, *Federal and State Postconviction Remedies and Relief* (The Harrison Company, 1987 edition), at page 266. Today, there is even a "Rehnquist Committee to Abolish Access by State Prisoners to Federal Court Review of Their Convictions", which committee is headed by former Justice Lewis Powell, who is a natural for that position because he has often been referred to as "the out-spoken antagonist of Federal Habeas," which came about because of the opinions that he wrote when he was on the Supreme Court advocating the restriction

of the use of the Great Writ in postconviction proceedings in federal courts involving previously convicted state prisoners. I must pause and ask: If Rehnquist's committee succeeds in closing the federal courthouse doors to most claims that Texas inmates want to urge in an attempt to establish that they were unlawfully convicted, and if this Court further closes its doors to inmates of this State who want to make like claims, where are these individuals supposed to go in order to seek relief on a claim that they were unlawfully convicted?

In the dissenting opinion that I filed in *Ex parte Empey*, 757 S.W.2d 771 (Tex.Cr. App.1988), I wailed like a stuck pig: "What is going on in this old house that causes this Court to turn the law of 'nunc pro tunc' topsy-turvy, and the law of postconviction writ of habeas corpus upside down....?" (775). I now confess: In making the statement, I had not considered that the trickle from the "cut back" movement, which originated in Washington, D.C., had actually become a raging river out of control, that spilled over its banks. Of course, if I had any doubts about the matter before today, today's majority opinion convinces me that the "cut back" movement in the postconviction writ of habeas corpus area of our State law is now well entrenched in Texas, especially at the Court of Criminal Appeals, the highest criminal court of this State. Also see *Ex parte Brown*, 757 S.W.2d 367 (Tex.Cr.App. 1988), and *Ex parte Christian*, 760 S.W.2d 659 (Tex.Cr.App.1988).

I find that the majority opinion in this cause performs such serious surgery on the Great Writ, as it applies to postconviction habeas corpus proceedings, in no less than a death penalty case, that it would be appropriate for those members of this Court who vote for the majority opinion to just go ahead and administer to it the last rites and then cremate it. However, because I am confident that the Great Writ, as it applies to postconviction proceedings, like the phoenix, will someday arise from the ashes to live another 500 years, I strongly urge our law school librarians not to remove from their respective library shelves such books as the following: Thomson, *An Historical Essy on the Magna Charta of King John* (1829 edition); Bridge, *A Treatise of the Legal Remedies of Mandamus and Prohibition, Habeas Corpus, Certiorari, and Quo Warranto* (1891 edition); Pollock and Maitland, *The History of the English Law* (1899 edition); Dowling, *Cases on Constitutional Law* (1959 edition); Schwartz, *The Roots of Freedom: A Constitutional History of England* (1965 edition); Sokol, *Federal Habeas Corpus* (1969 edition); Sharpe, *The Law of Habeas Corpus* (1976 edition); Duker, *A Constitutional History of Habeas Corpus* (1980 edition); Mian, *American Habeas Corpus: Law, History, and Politics* (1984 edition); Wilkes, supra; and Liebman, supra. By keeping these and other books that relate to the Great Writ on the shelves of our law school libraries, I believe that law students, at least until Orwellian times arrive, will get a kick out of reading about the Great Writ, as well as to see how much precious and valuable time some courts and some judges, both trial and appellate, who, back in the old days, spent in protecting the rights of individuals, who might otherwise have permanently sustained or suffered an unlawful conviction, and, in some instances, even wrongfully suffered a premature death.

However, until Orwellian times arrive, we should not forget what a moderate Supreme Court of the United States previously pointed out in construing the federal habeas corpus statutes, see 28 U.S.C. §§ 2254 and 2255: "While the 'rhetoric celebrating habeas corpus has changed little over the centuries (footnote deleted), it is nevertheless true that the functions of the writ have undergone drastic change ...' [H]abeas corpus is not 'a static, narrow, formalistic remedy,' *Jones v. Cunningham*, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963), but one which must retain the 'ability to cut through barriers of form and procedural mazes.' (Citations omitted.) 'The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure the miscarriages of justice within its reach are sur-

faced and corrected.' (Citations deleted.) Thus, we have consistently rejected interpretations of the habeas corpus statute that would suffocate the writ in stifling formalisms or hobble its effectiveness with the manacles of arcane and scholastic procedural requirements...." *Hensley v. Municipal Court,* 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973). Also see *Pavesich v. New England, et al.,* 122 Ga. 190, 50 S.E. 68, 70 (1905).

In the dissenting opinion that I filed in *Ex parte Renier,* 734 S.W.2d 349 (Tex.Cr. App.1987), I attempted to set out the history of the Great Writ in Texas, as applied to postconviction proceedings, and thus will not repeat here what I stated therein because I find that it is sufficient to state only the following for purposes of this dissenting opinion: "Our habeas corpus law has maintained [its] basic structure for at least 130 years", *Ex parte Renier,* at page 358; that the provisions of Art. 11.07, V.A.C.C.P., provide "statutory authority for the resolution of contested factual issues material on the question of whether the petitioner is illegally restrained under a judgment of conviction in a felony case ...", *Ex parte Young,* supra, at 828–829; and that it is always available to obtain release of anyone who is unlawfully restrained of his liberty. I ask: What could be more wrongful in denying someone relief where he has a valid claim that his conviction is void because he was tried, convicted, and given the death sentence by a unlawfully impaneled jury, and that issue was not raised on direct appeal? At the moment, I cannot think of anything that should prevent the Great Writ from being applied to such a situation. E.g., *Davis v. Georgia,* 429 U.S. 122, 97 S.Ct. 399, 50 L.Ed.2d 339 (1976); *Gray v. Mississippi,* 481 U.S. 648, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987).

Applicant's contentions do not implicate an ordinary run of the mill felony case. Applicant is presently under sentence of death. Liebman, see supra, points out in his book that "The Supreme Court frequently has recognized that imposition of the death penalty is such a uniquely final and draconian step from the viewpoint both of society and of the condemned individual that it must be attended with a special set of procedural protections designed to assure both that the courts have reliably identified those defendants who are guilty of a capital crime and for whom execution is an appropriate sanction [footnote deleted], and that 'the death sentence [is] '..., and appear[s] to be, based on reason rather than caprice or emotion." (Footnote deleted.) Because habeas corpus review is designed to assure that the state courts have provided due process and that the guilt and sentencing decisions of those courts are reliable [footnote deleted], it follows that the habeas corpus remedy is especially critical in capital cases because of the high constitutional standard of due process and the particular need for reliability in such cases. [Footnote deleted.]." § 2.2, at page 22. I agree with what Liebman states.

In this instance, applicant asserts that the trial judge's excusal of venireperson Mc Afee violated his "due process and equal protection of law" rights under the Federal and State Constitutions, and that his court appointed attorney on appeal was ineffective because he did not raise the Mc Afee issue on direct appeal. The majority opinion treats applicant's contention as asserting error as a matter of state law, see Art. 35.16, V.A.C.C.P., and concludes that "The improper exclusion of a prospective juror on statutory grounds ... does not involve jurisdictional defects ... As such, we will not consider such a claim for the first time in an application for writ of habeas corpus." The majority opinion also holds that because the issue was not presented on direct appeal, "The Great Writ should not be used to litigate matters which should have been raised on appeal." (Page 540 of opinion.) The Mc Afee issue was not raised on direct appeal because court appointed counsel chose not to raise the issue for reasons he gives us in his affidavit that is on file in this cause. By what the majority opinion holds, are we to not even concern ourselves with what occurred in the trial court and why the Mc Afee issue was not presented on direct appeal? I believe that we should consider the trial

record as well as the reason counsel on appeal gave as to why he did not raise the Mc Afee issue on direct appeal.

The trial record of this cause reflects that during his voir dire examination Mc Afee stated that he knew both applicant and his victim, and that because of this it would be "extremely difficult" for him to sit as a juror. Mc Afee nevertheless stated: "I would do my best [as a juror] if I were chosen [to serve] ..." Over objection, and pursuant to the State's challenge for cause, the trial judge excused Mc Afee, because, in the words of the trial judge, if Mc Afee were seated as a juror, "he would know more about the defendant and the victim than the other jurors would know about them." By this Court's En Banc decision of *Williams v. State*, 682 S.W.2d 538 (Tex.Cr.App.1984), and this Court's panel opinion of *Anderson v. State*, 633 S.W.2d 851 (Tex.Cr.App.1982), upon which *Williams*, supra, relied as authority, venireperson Mc Afee was not shown as a matter of law to have been disqualified from serving as a juror in this cause. Our state law is clear: Before such a person is disqualified from serving as a juror in Texas, much, much more must be established on the record. The trial judge clearly erred in sustaining the State's challenge for cause, and court appointed counsel also erred in not raising this issue on direct appeal.

Why did court appointed counsel on appeal not raise the Mc Afee issue on direct appeal?

The record reflects that Hon. Lynn Cooksey, the retained attorney who represented applicant at his trial, timely and properly objected to the trial judge's excusing Mc Afee because, in the words of the trial judge, "if Mc Afee had been selected to be on the jury, he would know more about the defendant and the victim than the other jurors would know about them." Cooksey's objection to the trial judge's sustaining the State's challenge for cause, and excusing Mc Afee, was the following: "Mr. Mc Afee was not disqualified under the law of the State of Texas or under the laws of the United States." And, under this

Court's decisions, he wasn't disqualified for the reason the trial judge gave. See *Williams*, supra, and *Anderson*, supra. Hon. Clyde Lee, the court appointed attorney who represented applicant on direct appeal, informs us in an affidavit that is in the record why he did not raise the issue on direct appeal: "All issues that were not raised on appeal were not raised because either Mr. Cooksey had waived them by not making objections to them at trial or by not making the proper objections to said issues during trial." Given the state of the record, I find that Lee was clearly mistaken that Cooksey had not timely and properly objected to the trial judge sustaining the State's challenge for cause and excusing Mc Afee. Clearly, the Mc Afee issue should have been presented on direct appeal.

I ask: Does today's majority opinion not actually return us to that day when the rule was that a habeas corpus court "would not review irregularities or erroneous rulings upon the trial, however serious, and that the writ of habeas corpus will lie only in case the judgment under which the prisoner is detained is shown to be absolutely void for want of jurisdiction in the court that pronounced it, either because such jurisdiction was absent at the beginning, or because it was lost in the course of the proceedings." *Frank v. Mangum*, 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969 (1915). This rule applied, no matter how egregious the conduct of the trial might have been, and no matter what punishment was assessed. In *Frank*, supra, the defendant was tried, convicted, and sentenced to a premature death in a mob dominated atmosphere. Although the courts gave Frank no relief, the Governor of Georgia ordered his sentence of death commuted to life imprisonment. Frank, however, did not get to serve the life sentence because a mob of Atlanta citizens, incensed at the Governor's actions, stormed the bastille, seized Frank, and hanged him by the neck. It now appears that Frank was innocent of the crime for which he was convicted and sentenced to die. See Rawls, "After 69 Years of Silence, Lynching Victim is

554

Cleared," March 8, 1982, *The New York Times,* at A12, col. 1.

Until the movement to curtail the Great Writ, as applied to postconviction habeas corpus proceedings, see *ante,* got underway, the scope of the Great Writ, as applied to postconviction habeas corpus proceedings, was expanded to permit virtually any kind of collateral attack on a conviction, as long as the individual had been finally convicted, was restrained of his liberty, and his claim asserted a violation of the federal constitution. Rarely was the claim made that the conviction was void because of a violation of the particular state constitution. However, today, more and more state courts are looking to their own state constitutions, rather than to the federal constitution, in making determinations whether rights of their citizens have been violated. See Duncan, "Terminating the Guardianship: A New Role for State Courts," 19 *St. Mary's Law Journal,* Number 4, 1988. Also see Ponton, "Sources of Liberty in the Texas Bill of Rights," 20 *St. Mary's Law Journal,* Number 1, 1988, and Harrington, *The Texas Bill of Rights: A Commentary and Litigation Manual* (Butterworth Legal Publishers, 1987). Of course, the right to trial by jury is protected by both the federal and state constitutions. Thus, the Mc Afee issue and the ineffective assistance of counsel on appeal issue should be reviewed in light of the Texas Constitution, if not the federal constitution. The majority opinion errs in not reviewing those two issues in tandem. I dissent to such action.

I conclude my dissenting opinion with these remarks: I can only hope that the majority opinion today is "merely temporarily bending with the wind." See Murphy, *The Constitution in Crisis Times* (1972 edition), at page xiii, quoting Commager and Morris, two famous American historians.