

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. AP-77,007

### EX PARTE NANCY GAIL KNIGHT, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### IN CAUSE NO. 53220-A FROM THE
### 47TH DISTRICT COURT OF POTTER COUNTY

**KEASLER, J., filed a concurring opinion**.

### O P I N I O N

I join the Court's opinion with the exception of Part II, and concur in the denial of

Nancy Knight's claim that no evidence supports the trial judge's cumulation order.

However, I would resolve this claim on the grounds that Knight is unable to collaterally

attack the cumulation order in her application for a writ of habeas corpus.

In *Ex parte Townsend*, we held that an applicant is unable to attack a cumulation order

for the first time in a post-conviction habeas corpus proceeding.[1]  We so held because

---

[1]  137 S.W.3d 79, 81 (Tex. Crim. App. 2004).

Townsend had an adequate remedy at law, namely, a direct appeal which was the appropriate avenue by which to seek the remedy sought.[2]  Townsend pleaded guilty to possession of cocaine and was placed on community supervision for ten years, which was subsequently revoked after he was convicted of murder and sentenced to 60 years.[3]  After revoking Townsend's community supervision, the trial judge sentenced him to ten years' confinement to run consecutively with his murder sentence.[4]  Denying Townsend's application challenging the trial judge's cumulation order, we held that, "There was nothing to prevent [Townsend] from raising [his] claim on direct appeal.  He had an adequate remedy at law.  Because [Townsend] did not raise the issue on direct appeal, [he] has forfeited his claim."[5]

In Knight's case, she did not simply forfeit her appellate rights through inaction.  She expressly waived them in her plea agreement with the State.  The record further suggests that Knight's agreement with the State contemplated the cumulation of the sentences or the fact that the sentences would be cumulated was, at minimum, an understood condition of pleading guilty pursuant a plea agreement.  On December 17, 2007, Knight pleaded guilty to the unlawful possession of a firearm by a felon.  The State waived one of the two alleged enhancements in the indictment reducing the punishment range to that of a second-degree

---

[2]  *Id.*

[3]  *Id.* at 80.

[4]  *Id.*

[5]  *Id.* at 81.

felony down from a first-degree felony as alleged. Knight pleaded true to the remaining enhancement allegation. After the judge accepted Knight's guilty plea and found Knight guilty, the plea colloquy continued as follows:

> THE COURT: And pursuant to that conviction and pursuant to the enhancement paragraph and your plea agreement, I'm going to sentence you to 15 years in prison, and that will be my sentence.
>
> I sentence you to 15 years in the Institutional Division and it will run—what does that say? The State waives—oh, is this going to run concurrent with the other [sentence]?
>
> [STATE]: By statute, Your Honor, it must run consecutive.
>
> THE COURT: It does?
>
> [STATE]: There was an affirmative finding in a drug-free zone in the prior trial.
>
> THE COURT: Okay. Then it will be consecutive with that other sentence I gave you.
>
> Are you sure of that?
>
> [STATE]: I am, Your Honor.
>
> THE COURT: Okay. I always ask now.
>
> [STATE]: I understand, Your Honor.
>
> THE COURT: All right. And this sentence will begin when the other sentence that you were—you received in this court earlier this year is finished.
>
> At this time, I'm going to remand you back to the custody of the Potter County Sheriff to begin this sentence. And you will receive credit in this case for your jail time.

The trial judge gave Knight's counsel an opportunity to address the court and asked, "What

do you have, Mr. Abbott?" Counsel directed questions to Knight about his representation of her in the present case and on appeal in the other cause.

From the record it appears that the cumulation of the sentences was an understood circumstance or condition of the plea bargain. It is apparent that the trial judge was following the plea agreement between the parties. Despite being given an opportunity to address the court, Knight never objected to the State's assertion that the sentences must run consecutively. Knight never objected or attempted to correct the trial judge's understanding of the plea agreement when he orally pronounced that the sentences would run consecutively. Knight also failed to object or move for a new trial upon the judgment's entry. The record strongly suggests that the plea agreement between Knight and the State contemplated the cumulative sentencing. If this is in fact not an accurate description of the agreement, perhaps Knight's claim on habeas should be one of ineffective assistance of counsel instead of one alleging no evidence.

Even if the cumulation of the two sentences was not a known consequence of entering the plea bargain, Knight's waiver of her appellate rights was an expressly bargained-for term of the parties' agreement that prohibits her from challenging the trial judge's cumulation order for the first time on habeas.[6] Before pleading guilty pursuant to a plea bargain with the State, Knight had the right to appeal—an adequate remedy at law for most alleged errors. But like any defendant entering into a negotiated plea bargain, she gave up

---

[6] *See id.*

a host of rights afforded her. Knight's plea negotiations with the State produced an agreement in which she specifically relinquished her ability to appeal from the trial court's judgment in consideration for the State's abandonment of one of the enhancement paragraphs and agreement that she serve a fifteen-year term of confinement. She did so by executing a document entitled "Defendant's Waiver of Appeal After Sentence Has Been Imposed In Accordance with a Plea Agreement and Waiver of Appeal Pursuant to the Plea Bargain Agreement." By her signature, Knight acknowledged that she "voluntarily, knowingly, and intelligently [gave] up or [waived] [her] right to appeal" after "being fully aware of the sentence imposed and of any errors that might have occurred in this cause, and after having been fully informed by the Court of the right to appeal."

Unlike Townsend, who merely failed to assert his cumulation-order issue on direct appeal, Knight voluntarily negotiated away her right to appeal. It is unclear to me why the majority places Knight in a superior position than it placed Townsend. Why does the voluntary waiver of appeal—the result of party negotiations—differ in terms of the availability of an adequate remedy at law from mere inaction on appeal? As a practical matter, it shouldn't. In Townsend's case, he had an adequate remedy at law, but failed to assert it. In Knight's case, she voluntarily gave up her right to appeal for consideration from the State. He forfeited his remedy in the appellate court. She waived her remedy in the trial court.

Knight's deliberate waiver of an adequate remedy at law precludes a collateral attack

on the trial judge's cumulation order. Entertaining the merits of Knight's no-evidence claim ignores *Townsend* and our refrain that "[t]he Great Writ should not be used in matters that should have been raised on appeal."[7]

With these comments, I concur.

DELIVERED: June 26, 2013

PUBLISH

---

[7] *Ex parte Banks*, 769 S.W.2d 539, 540 (Tex. Crim. App. 1989).