

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NOS. WR-67,880-03 & WR-67,880-04

### EX PARTE LUCKY JOHN LUNA, Applicant

### ON APPLICATIONS FOR A WRIT OF HABEAS CORPUS
### CAUSE NOS. F-0231777-VQ & F-0500345-KQ
### IN THE 204TH DISTRICT COURT FROM DALLAS COUNTY

*Per curiam.*  WOMACK, J., dissented.

### O P I N I O N

After pleading guilty without a plea bargain, Lucky John Luna was sentenced by Senior District Judge Gary Stephens to consecutive terms of fifteen and ten years' confinement for the aggravated sexual assault and sexual assault of E.M., respectively. Luna filed applications for a writ of habeas corpus arguing, among other things, that he received ineffective assistance of counsel at punishment. On the recommendation of Judge Lena Levario, the habeas judge, we granted Luna new punishment hearings. We subsequently granted the State's motions for rehearing, remanded the applications, and directed Judge Levario to order Judge Stephens to respond to Judge Levario's findings of fact. After

reviewing the supplemented record, we find Judge Levario's recommendation to be flawed and deny Luna relief.

In his applications for a writ of habeas corpus, Luna asserted the following bases in support of his ineffective-assistance-of-counsel claim:

- Counsel failed to adequate prepare him to testify at the punishment hearing that he intended to marry the victim of both cases (who was thirteen years old at the time of the abuse);

- Counsel failed to call available punishment witness;

- Counsel failed to object to the State's elicitation of inadmissible lay-witness testimony from a Child Protective Service worker who testified that Luna would likely re-offend if placed on probation;

- Counsel failed to make reasonably competent efforts to preclude admission of the substance of a conversation between Luna and the court's bailiff

- Counsel had a conflict of interest; and

- Counsel failed to present the "bailiff's interrogation" evidence in his motion for new trial.

Judge Levario concluded that Luna received ineffective assistance of counsel and recommended we grant relief. She entered the following findings of fact:

- "It is common knowledge among Dallas criminal attorneys that the visiting judge who presides over child abuse cases will discuss the case in chambers with counsel prior to any trial/hearing. During that conversation, the Court will indicate whether he will grant probation based on the facts of the case. This Court finds that such conversation and "promise" occurred in this case";[1]

---

[1] Findings of Fact and Conclusions of Law, at 3–4 (Sept. 27, 2013).

- "[D]efense counsel did not prepare Applicant to testify. The facts of this case were such that Applicant should have admitted to the Court that he wished to marry the complainant when he was initially questioned about it. That was a major consideration for the presiding judge—especially due to the fact that the complainant has a child (possibly two) fathered by Applicant";[2] and

- "Counsel failed to object to lay-witness testimony, by a CPS investigative worker, that Applicant was likely to re-offend. Also, counsel elicited evidence of an extraneous offense. Counsel also failed to object to admission of any evidence procured from a discussion [Luna] had with the court bailiff."[3]

In response to our remand order, Judge Stephens reviewed Judge Levario's findings and conclusions and stated, by way of affidavit, that Judge Levario's findings previously entered "are not supported by my personal recollection and they are not consistent with my sentencing practices."[4] Regarding Judge Levario's finding that it is the common practice of visiting judges to discuss the case with counsel and indicate whether he will grant probation on the facts of the case, Judge Stephens unequivocally stated that

> at no time during any discussion with counsel (with the State present) do I tell or promise any attorney how I will rule in a case. I always consider the full range of punishment in a case and I never make a ruling on punishment without hearing and considering all of the evidence that is presented.[5]

In her supplemental findings, Judge Levario acknowledged Judge Stephens's testimony, but

---

[2] *Id.* at 4.

[3] *Id.*

[4] 3 C.R. 7 (2nd supp.) (Affidavit of Judge Gary R. Stephens).

[5] *Id.*

nonetheless concluded that Luna received ineffective assistance of counsel.

Judge Levario's findings that (1) it is common knowledge that visiting judges presiding over child-abuse cases will discuss the case with counsel prior to a proceeding, and (2) Judge Stephens promised to give Luna probation are expressly contradicted by Judge Stephens's affidavit. They are further contradicted by the record of Luna's sentencing hearing:

> [COURT]: You told me you understood what you were charged with. I told you then that there is no plea bargain. I explained that a plea bargain is an agreement between you, your lawyer and the State on punishment.
>
> There was no plea bargain so you entered your plea. I accepted your pleas of guilty in each case and passed the case until today so that I could decide your punishment.
>
> I have received from the probation department a probation report on you. In that report you told the probation officer that you thought you had an agreement for probation.
>
> I never told you that there was any agreement, did I?
>
> THE DEFENDANT: No. I thought that's what it was for.
>
> THE COURT: Do you understand that there's been no agreement?
>
> THE DEFENDANT: I understand now; yes, sir.
>
> THE COURT: I'm not saying you're not going to get probation. I'm not saying you are. I don't know. I have not heard the evidence.
>
> THE DEFENDANT: She explained it to me.
>
> THE COURT: So you understand that you're in here today for me to hear testimony and that based on that testimony decide the appropriate punishment?

THE DEFENDANT:  Yes, sir.[6]

Accordingly, we hold those findings are not supported by the record, and are not entitled to any deference.

As to Luna's allegation that counsel was deficient for failing to prepare him to testify at punishment, specifically that Luna tell the judge that he wanted to marry E.M., we conclude that, even assuming that counsel performed deficiently, he is unable to demonstrate prejudice.[7]  Judge Stephens directly questioned Luna about Luna's feelings for the victim:

COURT:  How do you feel about her now?

LUNA:  How do I feel about [E.M.]? I still love her and care about her.

COURT:  As a child or as a lover?

LUNA:  Well, as a child but now it has escalated.  I mean, I care about her a lot.  I care a lot about her and now that she does have my baby, you know.  I mean, I've always cared about her but not like, you know.

COURT:  It sounds to [me] like she wants you to marry her and raise her child and have a family, a future with you.  Is that what you want?

LUNA:  I don't see it happening.  I really don't see something like that happening now that [this] has just gone this far like this and all

---

[6]  3 R.R. 4–5.

[7]  *See Strickland v. Washington*, 466 U.S. 668, 694 (1984) ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.").

the trouble [] I'm in.[8]

When the hearing continued the next day, Luna's testimony changed considerably. He stated unequivocally that he wanted to marry E.M. and provide for his new family.

The original factual findings state that Luna "should have admitted to the Court that he wished to marry the complainant when he was initially questioned about it. That was a major consideration for the presiding judge—especially due to the fact that the complainant has a child (possibly two) fathered by Applicant." Judge Stephens's affidavit is silent on whether Luna's intent to marry E.M. was a "major consideration" in assessing punishment.

The punishment-hearing record, however, suggests that it was not. Evidence admitted in the punishment hearing established by DNA testing that Luna fathered at least one child with E.M. E.M.'s other child was not tested, but both E.M. and Luna testified that while on bond for the first case, they repeatedly had sex. Luna's paternity of the other child was uncontested. Judge Stephens stated that he knew Luna violated the no-contact order as a condition of his bond and was having sex with the victim (which resulted in her pregnancy) while the first case was pending. He then expressed considerable concern about Luna's ability to comply with probation in light of the flagrant violations of court-imposed rules. Judge Stephens stated,

> Mr. Luna, I keep getting all kind of different answers from you. What is obvious is you've ignored all of my orders right up until about a month or so ago.

---

[8]  3 R.R. 97.

You are charged with aggravated sexual assault on a child. You continue to see that child. You impregnated that child while you're on bond. Now she has two kinds by you. Well, we know for sure one; the other one is just suspected to be by you.

You groomed that child with cash and favors and then you, who was a father figure to the child became father to your own child's children. I can't ignore that. I'm finding you guilty in both cases. [9]

Furthermore, Judge Levario's findings that counsel should have prepared Luna to give certain testimony does not establish that Luna was prejudiced by this allegedly deficient performance. "An assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, 'nullification' and the like . . . . It should not depend on the idiosyncracies of the particular decisionmaker, such as unusual propensities toward harshness or leniency."[10] The finding that Luna's intent to marry E.M. was a "major consideration for the presiding judge" does just that. Judge Levario's prejudice conclusion carries with it the improper implication that if Luna had stated an intent to marry E.M., Luna would have received probation because of the judge's propensity to mete out lighter sentences in those situations. Likewise, Luna cannot show that he was prejudiced by counsel's failure to call Luna's parents to testify about Luna's long-held intention to marry E.M. and provide for their kids. On review of the record, we hold that Luna cannot establish that, had he initially stated an intent to marry E.M. and had counsel offered testimony to support that claim, there is a reasonable probability that he would have

---

[9] 4 R.R. 30.

[10] *Strickland*, 466 U.S. at 695.

received different punishment.

Luna alleged that counsel was ineffective by failing to object to a CPS worker's testimony that Luna would most likely re-offend and was told that Luna sexually abused another person in addition to E.M. Assuming the CPS worker's testimony was inadmissible, Luna is unable to demonstrate that had this testimony been excluded, the judge would have sentenced him differently. Accordingly, Luna is unable to establish that his counsel was ineffective in this regard.

Luna also claims that counsel failed to object to the State's cross-examination that Luna's change of heart was the result of speaking with the court's bailiff, who allegedly told Luna that he blew his chance at receiving probation for not telling Judge Stephens that Luna wished to marry E.M. Judge Levario found that counsel did not object. But counsel did object to evidence that Luna changed his testimony because of a discussion he had with the court's bailiff during a recess. Judge Stephens sustained the objection and noted that he was not interested in any conversation Luna may have had with the court's bailiff during a recess in the punishment hearing. Therefore, even if counsel's conduct was deficient as alleged, Luna is unable to establish that he was prejudiced by it.

We further hold that the remaining bases for Luna's ineffective-assistance-of-counsel claims are without merit. Luna fails to demonstrate "(1) that his counsel was burdened by an actual conflict of interest and (2) that the conflict had an adverse effect on specific

instances of counsel's performance."[11]  Lastly, Luna does not provide any facts to support his allegation that counsel was ineffective for failing to present the "bailiff's interrogation" evidence in his motion for new trial.  He does not allege how counsel should have raised such information or how it would have resulted in his motion for new trial being granted instead of being denied.

Luna complains that he was denied his federal constitutional rights in the punishment hearing because the introduction of the nature and substance of the conversation between Luna and the court's bailiff was the product of the functional equivalent of custodial interrogation without receiving the proper warnings.  The State's cross-examination used the substance of the conversation to argue that Luna changed his testimony only because he thought it would better his odds in receiving probation.  This ground should have been raised on direct appeal and is therefore not available on collateral review.[12]

Accordingly, Luna's applications for a writ of habeas corpus are denied.

DELIVERED: November 19, 2014

DO NOT PUBLISH

---

[11]  *Acosta v. State*, 233 S.W.3d 349, 355 (Tex. Crim. App. 2007).

[12]  *Ex parte Banks*, 769 S.W.2d 539, 540 (Tex. Crim. App. 1989).